## Santee *versus* Santee.

1. A bequest was to "my wife all my household goods, &c., and one cow; also the use and occupancy in my dwelling-house during her life, or so long as she may choose to occupy the same herself, * * and stable-room for her cow, and hay and straw room; and also the use of one-half part of the garden, * * and also during the time aforesaid, hay, straw and pasture sufficient for her cow, and yearly one fat hog; one hundred pounds of beef, nine

[Santee *v.* Santee.]

bushels of wheat, nine bushels of rye, eight bushels of potatoes, and fuel as much as she needs, and the interest of $1000, to be paid to her yearly during her lifetime." He gave real estate to a son, and directed him "to give to my said widow yearly, *during the time mentioned in the foregoing bequest to her*, the interest of $500, a fat hog, nine bushels of wheat, nine bushels of rye, and the first year, hay for her cow, and so on every other year during the term aforesaid." After the death of the testator the widow moved from the premises. *Held*, that the son was bound to deliver her the articles mentioned in the devise to him.

2. The articles were for her support, and the testator did not intend to restrict them to her occupancy of his dwelling.

3. The will was not signed, but all in interest agreed that it should be proved and carried out. The son gave the widow a judgment-bond, conditioned for the payment of the annuity, and delivery of the articles to the widow "during her life." *Held*, that the bond was a construction of the will and a binding agreement.

4. The bond fixed a day for the payment of the annuity. *Held*, that the bond being to carry out the will, the delivery of the articles should be on the same day.

5. It was the duty of the son to be ready to deliver and to tender them on that day.

6. Whilst the widow occupied the house the delivery was to be there.

7. The widow having moved from the state, leaving an agent, it was the duty of the son to notify the agent of his readiness to deliver the articles, and request him to appoint a place for receiving them.

8. It was not the duty of the son to deliver the articles wherever the widow might be.

March 2st 1870. Before THOMPSON, C. J., AGNEW and SHARS-WOOD, JJ. READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northampton county:* No. 80, of July Term 1869.

Joseph Santee died on the 28th of September 1861. After his death there was found amongst his papers an instrument in his own handwriting purporting to be his will, but not signed. The paper contained the following provisions:—

"2. I give and bequeath unto my wife Sarah all my household goods and kitchen furniture, &c., and one cow; and also the use and occupancy in my dwelling-house during her lifetime, or so long as she may choose to occupy the same herself, the small room, &c., and stable-room in the barn for her cow, and hay and straw room, and also the use of the one-half part of the garden, &c.; and also during the time aforesaid, hay, straw and pasture sufficient for her cow, and yearly and every year one fat hog, weighing not less than two hundred pounds, one hundred pounds of beef, nine bushels of wheat, nine bushels of rye, and eight bushels of potatoes, and fuel as much as she needs, and the interest of $1000, to be paid to her yearly and every year during her lifetime, &c.

"3. I give and devise unto my son Simon, and to his heirs and assigns, my mill property, &c., in consideration whereof he is to pay $1400 as follows, that is to say, &c., * * * and give to my

[Santee v. Santee.]

said widow Sarah, yearly and every year during the time mentioned in the foregoing bequest to her, the interest of $500, a fat hog, weighing not less than two hundred pounds, nine bushels of wheat, nine bushels of rye, and the first year hay for her cow, and so on alternately every other year during the time aforesaid.

"4. I give and devise unto my son Joseph William, and to his heirs and assigns, my dwelling-house, &c., in consideration whereof he is to pay $500, that is to say, &c., and the interest of $500 yearly and every year to my said widow Sarah during her lifetime mentioned in the bequest made to her hereinbefore; and also one hundred pounds of good beef, eight bushels of potatoes, fuel, pasture for her cow, and stable-room in the barn for the same, and for her cow, hay and straw; and also hay the second year for her cow, and so on alternately every other year during the time mentioned in the bequest to her hereinbefore. But my son Joseph William shall not have the right to have the house occupied by any other person or persons but by himself and his family only during the time that my said widow Sarah shall live or occupy the same, without her full will first had and obtained for that purpose."

On the 12th of October 1861, Sarah Santee the plaintiff and widow of the decedent, Simon Santee the defendant, a son of the decedent, and all his other children, entered into an agreement that the instrument above mentioned should be admitted to probate as the will of the decedent, with the same effect as if it had been executed by him; and that his estate should be distributed in the manner set forth in the writing.

At the same time the defendant executed to the plaintiff a bond with warrant of attorney in the sum of $500, conditioned that he would pay and deliver to her $30 during her life, the first payment due on the 28th of September 1862, a fat hog weighing not less than two hundred pounds, nine bushels of wheat, nine bushels of rye, and the first year hay for her cow, and so on alternately every other year during the time aforesaid.

O. H. Meyers, Esq., who prepared the papers, testified that the "bond was based upon the provisions of the will," and it was admitted by the defendant on the trial that it was for the performance of these provisions.

In February 1863 the plaintiff left the premises of her husband and moved to the state of Ohio. She appointed Levi Hutchins her agent in Northampton to receive the articles and her annuity. For two years he received the money and articles according to the agreement. Judgment was entered on the bond February 11th 1864. In 1865 the defendant told Hutchins that the money and the articles were ready, but Hutchins said he would not receive them; that he had sent back his power of attorney to

[Santee *v.* Santee.]

the plaintiff.   He told the defendant that he had given up the bond to Mr. Meyers, and that he, defendant, should pay him.

On the 24th of January 1866, a scire facias was issued on the judgment, to which the defendant pleaded payment with leave, &c., and gave notice of· special matter.

On the trial, May 7th 1869, before Longaker, P. J., the plaintiff gave in evidence the foregoing facts.

The defendant then gave evidence that in December 1865, Hutchins was notified that the articles were ready, and that he should come and get them ; that he declined to receive them ; that the defendant always had them ready for delivery.   He also gave evidence of receipts from the defendant or her agents for the annuity up to the year 1868, the last receipt being that of Mr. Meyers ; also for the articles in 1863, 1864.

The defendant's points were :—

1. The bond on which the judgment stated in the sci. fa. issued in this case, having been given by defendant as security for the performance of the provisions set forth in the devise to him under and by the will of Joseph Santee, is to receive a construction according to said will.

2. By the provisions of the said will of the said Joseph Santee the said Simon was only obliged and required to give to the said Sarah Santee the fat hog, wheat, rye and hay mentioned in said bond, while the said Sarah continued to reside in the dwelling-house of the said Joseph Santee as authorized by said will.   And the said· Sarah Santee having removed from said dwelling-house and premises to the state of Ohio in February 1863, where she has resided ever since, the liability of the said Simon to deliver the said hog, wheat, rye and hay, ceased upon the removal of the said Sarah, and therefore under the proof defendant is not in default.

3. The plaintiff having not given any proof of demand upon the said defendant for the said hog, wheat, rye and hay, since the last delivery to her, is not entitled to recover.

The court answered the points in the negative.

The court charged :—

" * * *   To understand the relations of the parties we must look principally to the will.   [I say to you the construction of that will must be held to mean, that the bequest to the plaintiff of the hay, the fat hog, the rye and the wheat, as charged upon the real estate devised to Simon Santee, is limited only by the term of the natural life of Sarah Santee.]   This construction must prevail from the fact that the testator also gives his widow the privilege and use of part of the house, the garden, stable-room for a cow, &c. (charged upon another devise), so long as she shall choose to occupy them ; this provision secures to her a place of habitation limited only by her desire of occupancy ; the other provides a

[Sàntee v. Santee.]

bequest in money and specific articles, affording her the actual means of living and support during life; they are therefore distinct sentences of the will—the one limited by life, the other by occupancy.

" The parties themselves have also put this construction upon the will. * * * [They therefore having thus construed the will, and the obligation of the bond, will be held to that interpretation. So far, therefore, as relates to this branch of the case, we charge you that the plaintiff is entitled to recover.]

[" Upon the question of demand we say to you it was the duty of the defendant to have offered to deliver the articles—first having requested the plaintiff to fix a place of delivery at some reasonable point within her late neighborhood.] * * * Upon receiving this information (if you believe the testimony), it became the duty of the defendant to have called upon. Mr. Meyers, or to have written to the plaintiff requesting her to designate some suitable time and reasonable place for delivery.

" [The testator died September 28th 1861, and during that year, on or before September 28th 1862, it became the duty of the defendant to deliver the specific articles, if the will had stood without the qualifications attached to it by the bond. By the bond the ending of the year was fixed on the 12th of October 1862, therefore during that year and each year thereafter, the defendant was obligated to put himself in a situation to be willing and able to deliver at some suitable place and time, of which the plaintiff should have reasonable notice, all the articles specified by the will and as contained in the bond. Were there, then, any such time and place fixed by the defendant? If there were not, then the plaintiff will be entitled to recover the value of the articles not delivered, with interest from October 12th for every year in which there was a failure of delivery of all or any of them.] [It can make no difference, in relation to the hay, whether the plaintiff had a cow or not. Her right to have the specific articles is absolute, and when once delivered she may use them by actual consumption, or dispose of them by a sale at her will."]

The verdict was for the plaintiff for $152.08.

The defendant removed the case to the Supreme Court, and there assigned for error :—

1–5. The portions of the charge included in brackets.

6–8. The denial of his points.

*H. D. Maxwell*, for plaintiff in error.—The defendant may show that the consideration of the bond had failed: Miller *v.* Fichthorn, 7 Casey 252. Being based on the will it must be construed by that, and from it alone the intention of the testator is to be ascertained: Ruston *v.* Ruston, 2 Dall. 244; Findlay *v.*

Riddle, 3 Binn. 150; Lynn *v.* Downes, 1 Yeates 518; Turbett *v.* Turbett, 3 Id. 187. There should have been demand on the premises: Chit. on Cont. 627 note x; Hamilton *v.* Calhoun, 2 Watts 139; Barr *v.* Meyers, 3 W. & S. 299; Musselman *v.* Stoner, 7 Casey 269.

*O. H. Meyers*, for defendant in error, cited: As to construction of the will: Beck's Appeal, 10 Wright 527. As to delivery: Benley *v.* Whitney, 5 Greenl. 192; Stewart *v.* Morrow, 1 Grant 204; Roberts *v.* Beatty, 2 Penna. R. 63; Bean *v.* Simpson, 16 Me. 49; Howard *v.* Miner, 20 Id. 325.

The opinion of the court was delivered, May 5th 1870, by

AGNEW, J.—Whether we take for our guide the will of Joseph Santee, or the judgment-bond given by Simon Santee to Sarah Santee, we think the result is the same; the provision made for her is for life. The general intent of the testator to provide for his widow during her lifetime, is too plain for argument. It is manifested distinctly in the reservation of the purchase-money payable to Simon and Joseph William for the land devised to them, and the payment of interest to the widow during life, and the reserved principal to her death. It is also clearly stated in the devise and provision made for Joseph William, in the expression " during *her lifetime*," mentioned in the *bequest made to her* hereinbefore. This is followed immediately by the provision for the delivery of the beef and potatoes, and the way in which they are to be delivered, alternately every other year " during the time mentioned in the bequest to her hereinbefore." In the provision for Simon, perhaps the intent is quite as clear, for there the interest of the $500, and the articles, viz., the hog, wheat, rye and hay, are all placed on the same footing, and are to be paid and delivered " every year during the time mentioned in the foregoing bequest to her." Now the interest on the $1000, to be paid to her annually, is clearly stated to be for life, so that with the interest, the specific articles to be delivered every year during the time mentioned in the bequest to her, leave no doubt of the meaning. It is evident, from those clauses, as well as from the presumed intent of the testator to provide a comfortable living for her, that in giving to his widow the occupancy of certain rooms, in his dwelling-house during her lifetime, *or as long as she may choose to occupy the same herself*, he did not by the latter clause intend to restrict the provision for her support, to the period of occupancy of the dwelling-house. This would be a foolish and harsh condition, that she should be supported only so long as she remained in that dwelling. It would be as much as to say, no matter how inconvenient or uncomfortable her residence there might become, she must abide there or lose her support. It is argued, that the

[Santee *v.* Santee.]

judgment-bond is an interpretation of the will by the parties themselves. It is so, and more. It is their agreement, and controls in the absence of fraud or plain mistake, of which there is no evidence. In regard to the delivery of the specific articles, we think the case is also with the plaintiff below. The testator died on the 28th day of September 1861. Under the will the yearly payments and delivery would begin in one year from that time. The bond which was drawn and executed two weeks after the death of the testator, fixes the 28th day of September 1862, as the time when the payment of the annual interest began. This is evidently, also, the time intended to be fixed for the delivery of the specific articles. Such is the reasonable intendment and construction of the condition of the bond. This being so, we have a case where the time of delivery of the specific articles, to wit, "a fat hog weighing not less than two hundred pounds, nine bushels of wheat, nine bushels of rye, and the first year's hay for her cow, and so on alternately every other year during the time aforesaid," was fixed by the contract. The articles here are specified both as to kind and quantity, and therefore needed no act of the plaintiff by way of election, selection, or determination, of quantity. The case is therefore not governed by the principles of Hamilton *v.* Calhoun, 2 Watts 139, which required an election and specification of the kind and quantity of the farm products, by the widow, before the articles could be known. But it is governed by the principles of the common law as stated in Roberts *v.* Beatty, 2 Penna. R. 71; Barr *v.* Meyers, 3 W. & S. 299; Fleming *v.* Potter, 7 Watts 380; Stewart *v.* Morrow, 1 Grant 204; and Allen *v.* Woods, 12 Harris 78. The time of payment being fixed, and the articles specified, it was the duty of the defendants to be ready with the articles for delivery on the day, and to tender or offer to deliver them to plaintiff on that day. So long as the plaintiff remained in the occupancy of the house and had her fixed residence there, that was evidently intended to be the place of delivery. There the testator died, there the widow was to live, and the farm devised to the defendant adjoined it. After she moved away and had left an agent to receive the articles, the only change in the mode of performance made necessary by the act of the widow, was that, instead of a delivery of course on the premises, it then became the duty of the defendant before the day of delivery, to give notice to the agent of his readiness to deliver and to request him to appoint a place for receiving the articles. But the plaintiff having moved out of the state, when her agent ceased to act, the case became changed. Clearly it was not the duty of the defendant to follow her whithersoever she might go, and to deliver the articles wherever she might be. Duties are often changed by circumstances where the circumstances are produced or caused by

[Santee *v.* Santee.]

the act of the party to whom performance is to be made. Where that party moves out of the state the cases recognise a change in the duty : Roberts *v.* Beatty, 2 Penna. R. 71. It is old law, that a debtor is not bound to seek his creditor out of the realm : Litt. § 340 ; Coke Litt. 210, b. This has been recognised as the law in Emlen *v.* Lehigh Coal and Nav. Co., 11 Wright 83. But still, although the defendant was not bound to seek the plaintiff beyond the boundaries of the state; being the debtor in the contract it does not follow that he could remain passive. He was bound to show readiness to perform, and such a reasonable effort toward performance as the circumstances of the case permitted. And such is the effect of the decision in Roberts *v.* Beatty, Barr *v.* Meyers, and Fleming *v.* Potter, *supra.* In Maine, it has been held, that if no place be found for delivery, the foreign domicil of the creditor does not absolve the debtor from the duty of ascertaining from the creditor the place where he will receive the goods : Bisely *v.* Whitney, 5 Greenl. 192. As the evidence stood, it appeared that when the widow's agent ceased to act, he referred the defendant to Mr. Meyers, as the person to whom the papers were transferred : and it further appears, that in 1868, the defendant paid the money part of his bond (the annual interest) to Mr. Meyers for the years 1866 and 1867 ; and also that the residence of the plaintiff in Ohio was well known to her agent.

On the other hand, the defendant gave no evidence of any effort on his part to ascertain where the articles were desired to be delivered. Under these facts, it clearly was not error in the court to charge that it became the duty of the defendant to have called on Mr. Meyers or to have written to the plaintiff requesting her to designate some suitable place for delivery. Indeed the court gave him rather a greater latitude than the contract warranted, for the time of delivery was fixed by the bond, and it was therefore the duty of the defendant to make his inquiry in due season so as to be ready to deliver at the time fixed for payment.

Finding no error in the record, the judgment is affirmed.