## Gilbert's Appeal. Tarr's Estate.

1. While to make legacies a charge on land it must be found that such was the testator's intention, still it is not necessary that its ascertainment should rest on direct expression. It is enough if the intention appears by natural and obvious implication from the provisions of the will.

2. Testator gave certain land to one of his sons, at $33 per acre, the proceeds thereof to be divided into eight equal shares, and distributed equally among his sons and daughters. *Held*, that it was the intent of the testator that the land should be charged with the payment of these legacies.

3. Hackadorn's Appeal, 1 Jones 86, and Wright's Appeal, 2 Jones 256, distinguished. Hart *v.* Homiller, 8 Harris 248, followed.

October 26th 1877. Before MERCUR, GORDON, PAXSON, WOOD-WARD and STERRETT, JJ. AGNEW, C. J., and SHARSWOOD, J., absent.

Appeal from the Court of Common Pleas of *Westmoreland county:* Of October and November Term 1876, No. 114.

This appeal was from the decree of the court confirming the report of the auditor awarding distribution of the proceeds of the sheriff's sale of the property of James R. Tarr, Jr. The contest over the fund was between the creditors of James R. Tarr, Jr., and the legatees under the will of James R. Tarr, Sr., who contended that under the provisions of said will their legacies were a charge upon the land sold. The material portions of the will of James R. Tarr, Sr., which was dated December 13th 1864, were as follows:—

"* * * And as to my worldly effects, I order that all my just debts, funeral expenses, and charges of proving this my will, be in the first place fully paid and satisfied, and after the payment thereof, I give and bequeath my real estate (the several lots of land) in the village of Bethany, in said township, and the land adjoining said village on the east, together with the appurtenances, the brick house and buildings, and all the household furniture, and the cows, hogs and sheep, just as it now is, to my wife, Mary Tarr, to possess and use so long as she shall live ; and after her death, I order that the said Bethany property, real and personal, be sold, and the proceeds thereof be distributed among my children, giving my son Irwin W. Tarr twenty-five dollars, and to my daughter Ann Eliza Tarr one hundred dollars, and to my daughter Mary Ann Buttermore twenty-five dollars, and the residue be equally distributed among Rose Husband, James R. Tarr, Catharine Tarr, Gasper Tarr, Sarah Gilbert, Matilda Bovard, Melker Tarr and Francis Tarr, * * * about seventy acres of land, and not to exceed seventy-five acres, including the buildings, I give and bequeath the same to my son James R. Tarr, at thirty-three dollars per acre, and the proceeds thereof to be divided into eight equal shares, including his own, and distributed equally among my sons and daughters, Rose Husband, Catharine Tarr, Gasper Tarr, Sarah Gilbert, Ma-

[Gilbert's Appeal.]

tilda Bovard, Melker Tarr and Francis Tarr, my son James R. Tarr to have possession of the said real estate immediately after my just debts are paid; and in one year after he shall get possession of the same he shall commence paying annually the share of each, commencing with Rose Husband; and in one year following the time when Rose Husband's share is due, he shall pay Catharine Tarr her share, and so on with the rest, paying each one his or her share in the order they are named above; and I order that the balance of my farm be divided into two parts, making the turnpike road the line between them, and all the land north of said road, excepting what I give to my son James, I give and bequeath to my daughter Rose Husband, at thirty dollars per acre, the proceeds to be divided into eight equal shares, including her own, and to be paid in equal annual payments, in the same manner, time and order that James R. Tarr is to pay his, and to the same ones of my sons and daughters, commencing with James R. Tarr, and also to have possession immediately after my debts are paid; and the remainder of my land on the south side of said road, I give and bequeath to my son Melker Tarr, at thirty dollars per acre, the proceeds to be equally distributed and paid to the rest of my children, in the same manner that they are to be paid by James R. Tarr and Rose Husband, and to the same ones. I order that Ann Tarr shall retain possession of the house in which she now lives, and the two acres of ground belonging thereto, for a home as long as she shall live, or as long as she shall stay on the same, and after her death or her removal therefrom, then the same to fall to my son Melker Tarr. I order that my executors of this my will, lease or rent my said farm on the turnpike road until my debts are fully paid; and the remainder of my estate I give and bequeath to James R. Tarr, Rose Husband, Catharine Tarr, Gasper Tarr, Sarah Gilbert, Matilda Bovard, Melker Tarr, Francis Tarr and Mary Ann Buttermore, to be equally divided among them."

The auditor, after a review of the cases of Montgomery v. McElroy, 3 W. & S. 370; Brandt's Appeal, 8 Watts 198; Wright's Appeal, 2 Jones 257; Hackadorn's Appeal, 1 Jones 86; was of the opinion that there was no express charge of these legacies upon the land devised to James R. Tarr, nor was he able by an examination of the whole will to find by any legal inference, that it was the intention of the testator that they should be a charge upon the land devised to his son. He therefore found that these legacies were not liens on the real estate of James R. Tarr, Jr., and consequently not entitled to share in this fund, and he awarded it to the contesting creditors.

The court dismissed the exception to this report and confirmed the same.

From this decree Mrs. Gilbert and Mrs. Bovard appealed.

[Gilbert's Appeal.]

*H. P. Laird*, for appellants.—Whether or not a legacy is to be charged upon land is to be collected from all parts of a will, and no form of words is necessary to produce that effect where the intention is manifest: English *v.* Harvey; 2 Rawle 305; Tole *v.* Hardy, 6 Cowen 333; Ripple *v.* Ripple, 1 Rawle 389.

The testator intended to confer the title upon the devisees only on condition that they paid the valuation fixed. The intent to charge is plain: Field's Appeal, 12 Casey 11; Knecht's Appeal, 21 P. F. Smith 343; Ruston *v.* Ruston, 2 Dall. 243; Tower's Appropriation, 9 W. & S. 103; Swoope's Appeal, 3 Casey 58; Baker's Appeal, 9 P. F. Smith 313; Hart *v.* Homiller's Ex'rs, 11 Harris 42.

*Henry D. Foster*, for appellees, relied upon Hackadorn's Appeal, 1 Jones 86, and Wright's Appeal, 2 Id. 256.

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

James R. Tarr, Sr., by his will dated the 13th day of December 1864, devised to his son, James R. Tarr, Jr., a tract of land described in the proceedings for the sheriff's sale as containing seventy-four acres, more or less. The following are the terms of the gift: "I give and bequeath the same to my son, James R. Tarr, at thirty-three dollars per acre, and the proceeds thereof to be divided into eight equal shares, including his own, and distributed equally among my sons and daughters," seven of whom, in addition to the devisee, the testator then mentioned. Two other pieces of land were then given to his daughter, Rose Husband, and another son, Melker Tarr, both at the valuation of thirty dollars per acre. The executors were required to rent the real estate until the debts of the testator should be paid, and possession by the devisees was postponed until such payment should be made. Some lots of land in and adjoining the village of Bethany, and his household furniture, cows, hogs and sheep, "just as it now is," in the language of the will, were given to the widow, Mary Tarr, during her life, and at her death, a sale was ordered of all that property, the proceeds to be distributed amongst the children of the testator. Irwin W. Tarr, a son, was to receive twenty-five dollars; a daughter, Ann Eliza Tarr, one hundred dollars; and another daughter, Mary Ann Buttermore, twenty-five dollars. The residue was to be divided amongst his eight other children. The concluding clause of the will gave "the remainder" of the testator's estate to nine of his children, eight of them being those designated to receive the proceeds of the real estate, and the ninth being Mrs. Mary Ann Buttermore.

It is apparent that the devises and bequests preceding the concluding gift of "the remainder," had embraced the entire estate of Mr. Tarr. Directions for sale and distribution had been given

of the real and personal property which Mrs. Tarr was to take for life. That there was no other personal fund is clear from the provision for the payment of debts from rents afterwards to accrue. The residuary clause could have application, therefore, to nothing except the lands devised to James R. and Melker Tarr and Mrs. Husband, in the event that either of them should refuse to accept the devise in his or her favor at the valuation fixed. It is true that Mrs. Buttermore was brought in to share in the property in such an event, but it is obvious, nevertheless, that the clause must have been designed ˚to have the operation attributed to it, or it could have no operation at all.

It was the plain purpose of this will to furnish to the legatees for the amount of the valuation of the land devised to James R. Tarr, Jr., the security of the land itself. He was to take it at "thirty-three dollars per acre," and the "proceeds" were to be divided and distributed. A specified sum of money was not to be paid to each legatee—each was to have a share of the purchase-money, which was to be "the proceeds" of the land. While the order, amounts and periods of payments after the devisee should obtain possession were defined, yet the language of the will makes this a different case from those where a gift of land to a child has been accompanied or followed by a direction that he should pay certain specified and enumerated legacies. Such a devise, without more, if accepted by the devisee, would make him personally liable, but a charge upon the land would not be created. But where, from the entire body of a will, an intention is manifested on the part of the testator to make the property the security of the legatees, it will become subject to the charge.

While, in order to make legacies a charge on land, it must be found that such was the testator's intention, still it is not necessary that its ascertainment should rest on direct expression. It is enough if the intention appears by natural and obvious implication from the provisions of the will. No form of words is necessary to produce the effect, and where the intent is manifest, courts are bound to carry it into execution: GIBSON, C. J., in Ripple v. Ripple, 1 Rawle 386. There a testator had devised three-fourths of a tract of land to his son, followed by this direction: "My son Philip is to keep and provide for my beloved wife, and my eldest daughters, Catharine and Elizabeth, during their natural lives." It was held, that although land devised is not expressly charged with the maintenance of infirm children of the testator, yet if such an intention can be clearly collected from all the parts of the will, considered in reference to the testator's circumstances, the charge will attach upon the land, and follow it into the hands of subsequent purchasers. In Hoover v. Hoover, 5 Barr 351, a devise by John Hoover to his son David, "yielding and paying out of the same $7250, in instalments of $700," was held to charge the land;

[Gilbert's Appeal.]

and BELL, J., said, that "in a will, no precise form of words is necessary to create a condition. Any expression denoting such an intention will have that effect." Thus a devise "to A., he paying," or "he to pay 500l. within one month after my decease," would be a condition for breach of which the heir might enter: 2 Powell on Devises 251. Where, as here, the devisee was to take the land "at thirty-three dollars per acre," and the legacies were to consist of "the proceeds" derivable out of it, for the distribution of which provision was made, the condition that the land should be made subject to the amount of the valuation would seem to be a natural and necessary implication.

At the argument, the counsel for the appellees relied on the authority of Hackadorn's Appeal, 1 Jones 86, and Wright's Appeal, 2 Id. 256. In the first of these cases, the testator, after devising different parcels of land to his sons, directed the selection of appraisers, the valuation of the lands, and payments out of the valuation to his daughters in order to equalize the shares of his sons and daughters, with the qualification that the share of each son should be twenty-five dollars more than that of either of the daughters. The will contained this exceptional provision: "The divide that my daughters may have received out of the proceeds of my personal estate to be counted to them out of their share." The payments, besides, were to be made by the sons whose lots should be most valuable. Of course, no land could be charged, for no land could be designated. The properties, the devisees of which were to become liable, could only be ascertained by the appraisement to be made after the testator's death. In Wright's Appeal, all that is shown in regard to the will was the statement by the reporter that Carson had devised land to his son Thomas; that if he chose to accept, he was to pay $1700 to different persons; and that he accepted. In a contest between his alienee and one of the legatees, it was held that the land was not charged. In the later case of Hart v. Homiller, 8 Harris 248, after giving his son Samuel the use of certain real estate during the life or widowhood of his wife, at a yearly rent of $50, to be paid to the wife, the testator directed that upon her death or marriage, a division of the property should be made, and thereupon devised to Samuel and his heirs and assigns the store he then occupied, and the lot of ground back as far as the slaughter-house, at a valuation to be made by six respectable brick-layers and carpenters. This valuation was included in the residue of the estate, which was given to the testator's six children, of whom Samuel was one. The interest of Samuel was sold at sheriff's sale, and afterwards sold to Hart, under a judgment against the first purchaser. It was held that the terms of the will made the amount of the valuation a charge on the land, and that the purchaser at the sheriff's sale held it subject to the charge. Hackadorn's Appeal and Wright's Appeal are precedents to govern cases presenting

[Gilbert's Appeal.]

precisely indentical facts, but for the settlement of this litigation Hart *v.* Homiller, furnishes a better and safer rule.

The decree is reversed at the costs of the appellees, and it is now ordered and decreed that the fund remaining in court be applied in payment of the shares of Sarah Gilbert and Matilda Bovard, in the valuation of the land of James R. Tarr, Jr., as established by the devise to him in James R. Tarr, Sr.'s will.