# P. K. Dickerman *v.* John Eddinger.    Margaret Rockell's Appeal.

*Will—Charge on land—Evidence.*

A charge on land cannot be created by the mere gift of an annuity, but it may be created without express words and by implication from the whole will that such was the intention.

Testator directed as follows: "My son John he shall settle my personal property as soon it is possible he shall pay of the money from my personal goods the half of the money to my Daughter Marget and what is Left from the Balance of the Thousand Dollars he tookt of for himself my Son John Shall pay to my Daughter Marget an Annually one a Hundred and twenty five Dollars for her Natural Life (for Dowery) time or as Long as she will Liv in this World and my Son John he shall have all my real Estate for his own property as Soon my Daughter is Deased my Son John Shall not pay any Longer not to her heirs and to nobody it be Stopt." Testator was an old man and died within two months of the execution of his will. He had very little personal property. *Held,* that the annuity of the daughter was charged upon the land.

Argued March 14, 1895. Appeal, No. 268, Jan. T., 1895, by Margaret Rockell, from order of C. P. Northampton Co., August Term, 1893, No. 3, distributing proceeds of sheriff's sale. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of H. J. Steele, Esq., appointed to distribute proceeds of sheriff's sale of real estate.

The property sold was levied upon as the property of John Eddinger. Margaret Rockell claimed $125 as an unpaid install ment of an annuity alleged to have been charged on the land by her father, Samuel Eddinger.

The will of Samuel Eddinger was as follows:

" In the name of God I Samuel Eddinger, of Moore Township, County of Northampton, State of Penn. Do make this my Last Will and testament as follows.

> that is to Say my Disire
> my Son John he Shall have one
> thousand Dollars in Advance before
> any of the heirs shall have any money
> from my Estate personal property
> first my Son John Shall Setle up all
>> my Depts funeral Expence &c.
>> till all is paid
>> my Son John he Shall Setle
>> my personal property as soon
>> it is posibile
> he shall pay of the money from
>> my personal goods the half of
> the money to my daughter Magret and
> what is left from the Balence after
> the Thousand Dollars he tookt of for himself
> my Son John Shall pay to my

for Dowery $\left\{\begin{array}{l}\text{Daughter Magret an Anually one a} \\ \text{Hundred and twenty five Dollars for her} \\ \text{Natural Life time or as Long She}\end{array}\right.$

> will Liv in this World
> and my son John he shall have
> all my Real Eastate for his own
> property as soon my Daughter is Deased

Dowery
interest

my Son John shall not pay any longer
not to her heirs and to no body
it be stopt.

" Sined Sealed Published and Declared by the testator as and his Last will and
testament in the presence of us who in his Presence and at his Request have Subscribed our names as Witness thereto.

Witness presence:

SAMUEL GEISER.
J. G. KOCH, M. D.

{ SAMUEL EDDINGER, Sal."

At the time the will was executed testator had very little personal property, amounting in all to about $400. The real estate was valued at $4,000. Testator was of advanced age and died two months after the execution of his will.

The commissioner awarded the sum of $125 to Mrs. Rockell. Exceptions to the report were sustained by the court, and an order entered distributing the fund to the plaintiff in the execution.

*Error assigned* was above order.

*O. H. Meyers, A. S. Knecht* with him, for appellant.—To charge the land with the payment of debts or legacies requires express words or necessary implications: 13 Am. & Eng. Ency. of Law, 110; Gilbert's App., 85 Pa. 347; Okeson's App., 59 Pa. 100; Cleary's App., 35 Pa. 54; Davis's App., 83 Pa. 353; Deveraux v. Deveraux, 78 N. C. 386; English v. Harvey, 2 R. 305; 2 Jarman on Wills, 525; Hunt's Est., 133 Pa. 260.

*Robert I. Jones, R. E. James* with him, for appellee.—The implication of intention to charge land must be "clear and satisfactory:" Ripple v. Ripple, 1 Rawle, 386; South Mahoning Twp. v. Marshall, 138 Pa. 574; Montgomery v. McElroy, 3 W. & S. 371; Wright's App., 12 Pa. 256; Buchanan's App., 72 Pa. 448; Hackadorn's App., 11 Pa. 89; Cable's App., 91 Pa. 327; Walter's App., 95 Pa. 305; Haworth's App., 105 Pa. 362; Rockell v. Eddinger, 81* Pa. 523.

An implication may arise from blending or mingling personalty and realty in a residuary clause, but this will is distinctly

free from any mingling of personalty with realty and contains no residuary clause of any kind: Brand's App., 8 W. 198; Harper's Est., 2 Pierson, 49; DeWitt v. Elder, 4 W. & S. 414; Cable's App., 91 Pa. 329; Hamilton v. Porter, 63 Pa. 332; Buchanan's App., 72 Pa. 448.

Appellant argues that John had no gift from testator adequate to the personal charge imposed. The testator had in mind the fact that he had just given John one thousand dollars, and that he had in the clause creating the annuity given the one half of the balance of his personal estate for this very purpose.

OPINION BY MR. JUSTICE FELL, May 20, 1895:

The will of Samuel Eddinger was before this court in 1875 on an appeal in an action of ejectment. The contention then was that the will was void for the reason that it was contradictory and unintelligible, or that if susceptible of interpretation the testator's daughter took a life estate in the realty with remainder to his son. It was then held that the intention of the testator could be ascertained: that the real estate was devised to the son, and was not subject to a life estate in the daughter: See Rockell v. Eddinger, 81* Pa. 525. The question now raised, whether the annuity to the daughter was a charge upon the real estate, was not then before the court; and we think that the learned judge of the common pleas was in error in concluding that a construction which denied a life estate to the daughter gave the real estate to the son freed of the charge of the annuity. In the opinion in Rockell v. Eddinger, supra, it is said that the words following the devise to the son did not create a life estate in the daughter, but had reference to her annuity, as there was no devise over and no other intention disclosed. To give them this effect it is not essential that they should form a separate sentence. If a plan of punctuation is adopted by which they do not, there is an express charge upon the land. If they are separated by a period, the reference to an annuity is unchanged, and the connection in which they appear gives strength to the implication of a charge.

The question whether an annuity is a charge upon real estate is one of intention. If the actual intention appears, no form of words is necessary. Unless technical words by which

rules of property are fixed have been used the intention is to be gathered from the whole will. A charge cannot be created by the mere gift of an annuity, but it may be created without express words and by implication from the whole will that such was the intention. As to this rule all our cases agree, and any apparent departure from it in the decisions will be found to have resulted from the difficulty of applying the general rule to the facts of a particular case. In Ripple v. Ripple, 1 Rawle, 386, Chief Justice GIBSON said: " A legacy may be charged on land by implication. No form of words is necessary to produce the effect, and when the intent is manifest courts are bound to carry it into execution." In support of this he cites Nicholas v. Postlethwaite, 2 Dallas, 131; Hassancleaver v. Tucker, 2 Binn. 526; Witman v. Norton, 6 Binn. 395, and Dobbins v. Stevens, 17 S. & R. 13. This has since been followed in numerous cases, among them Gilbert's Appeal, 85 Pa. 347, in which it was said by WOODWARD, J., " While in order to make legacies a charge upon land it must be found that such was the testator's intention, still it is not necessary that its ascertainment should rest upon direct expression."

In this case the intention of the testator appears to have been, first, to give his son one thousand dollars and then to divide the balance of his personal estate equally between his son and daughter; secondly, to give his daughter an annuity of one hundred and twenty-five dollars for life; thirdly, to devise the whole of his real estate to his son. He was a man of advanced age, and died within two months of the execution of the will. His personal estate, after the payment of debts and expenses of administration, amounted to only four hundred dollars, and his real estate was worth about four thousand. The will provided for an immediate distribution of the personalty, and there was nothing left but the realty from which the annuity could be paid. It is true that the mere fact that the testator had no personal estate from which the annuity could be paid is not in itself conclusive of an intention to charge it upon the realty, or alone a sufficient ground for such an inference. But it is a fact to be taken in connection with other facts in arriving at a conclusion, and is of more weight when from the age of the testator and his circumstances in life it is improbable

that he contemplated any change in the character or amount of his estate.   The words written on the margin of the will are not without significance in its construction.   They were written by the scrivener before signing.   The words "for dowery" are more than a mere marginal note.   They are connected by a bracket with three lines of the will relating to the annuity, and in the second of these lines is a caret, indicating that their omission from the text was accidental.   This makes them a part of the will, and not merely a memorandum of its contents, and they are an aid in ascertaining the meaning of a clause not clear or free from doubt.   They were evidently used in reference to a charge on land of the nature of a dower interest, and indicate an intention that the annuity should be a charge of that nature.

The intention to give the daughter an annuity for life is clear beyond doubt.   The circumstances of the testator and the nature of his property, the direction for the immediate distribution of the personalty and its insufficiency to sustain a charge, the use of words showing that the testator had in mind a payment secured on land, and the connection in the will of the words making provisions for the daughter with those creating a devise to the son, and the direction that the payment should be made by the executor, who was also the devisee of the land, each indicate an intention to make the annuity a charge on the real estate, and taken together give rise to an implication which we think is sufficiently manifest to sustain the charge.

The order of the court of common pleas of Nov. 12, 1894, is reversed and set aside at the cost of the appellee, Dickerman, and the record is remitted with directions that distribution be made in accordance with the report of the commissioner.