# Gingrich's Estate.

*Will—Devise—Legacy—Charge on land—Supply of hay to widow to feed cattle.*

1. Where a testator bequeaths to his widow one horse and two cows, and charges land with an annuity in her favor for life, and further directs that the owners of the land "are yearly to put in the stable on the premises occupied by my wife, so long as she remains my widow, as much hay as she may need to feed one horse and two cows without charge," such a direction creates, as to the hay, a charge on the land, whoever may be the owners of it; but such owners are not obliged to supply the widow with hay during a period when she kept no live stock at all on the land.

2. In such a case the purpose of the testator was to afford to the widow a supply of only so much hay as she might "need" to feed one horse and two cows. If she placed herself in such a position that she did not need the hay for the purpose specified, she was not entitled to receive it.

3. The mere fact that the widow removes from the occupancy of the residence provided for her by her husband's will, will not defeat her right to the hay, if as a matter of fact she continued to keep on her land one horse and two cows. Santee v. Santee, 64 Pa. 473, explained and distinguished.

Argued May 24, 1909.   Appeal, No. 1, May T., 1909, by
Malinda Gingrich, from judgment of Superior Court, March T.,
1908, No. 16, reversing decree of O. C. Dauphin Co., dismissing
petition to enforce charge on land in Estate of Cyrus Gingrich,
deceased.   Before FELL, BROWN, MESTREZAT, POTTER, ELKIN
and STEWART, JJ.   Affirmed.

Appeal from Superior Court.

The facts appear from the report of the case in 36 Pa. Supe-
rior Ct. 266, and by the opinion of the Supreme Court.

*Error assigned* was the judgment of the Superior Court.

*William M. Hargest,* with him *I. B. Swartz* and *John C
Nissley,* for appellant.—If this provision is interpreted for
the widow's  benefit, then she had that property for life with
enough hay for one horse and two cows to be deposited in the
stable, and be able to secure the increased rental therefrom.
The Superior Court ignored the case of Santee v. Santee, 64
Pa. 473, which the appellant contends rules the one at bar.
See also Wusthoff v. Dracourt, 3 Watts, 240; Marshall v. Blew,
2 Atk. 217; Steele's App., 47 Pa. 437.

*John E. Snyder,* with him *E. M. Hershey,* for appellee.—The
distinction between the case of Santee v. Santee, 64 Pa. 473,
and the case under consideration is obvious.   In the Santee
case there was a direct bequest to the widow of sufficient hay,
limited only by her natural life.   In the present case there is
no direct bequest of the specific article (hay) to Malinda Ging-
rich so long as she remains a widow—it is not charged on the
land devised—and is directed to be "put in the stable on the
premises occupied by my wife"—and is limited to "as much
hay as she may need."

In Goshen's Est., 9 Lancaster Bar, 18, the orphans' court
of Lancaster county, determined that a bequest of certain
rights and privileges to the widow on a farm devised from
which she voluntarily withdraws will not entitle her to an
equivalent in money.

OPINION BY MR. JUSTICE STEWART, October 11, 1909:

The testator was the owner of two adjoining farms, each tenanted by a son. On one of these farms which he designated as No. 2, he had erected a separate building apart from the farm buildings, which he himself occupied with his wife. By his will he gave to either son the farm he tenanted at a valuation, and charged upon each farm the sum of $5,000, out of the purchase money, the interest to be paid to his widow during her life, and in case either son declined to accept under the terms, the farm devised to such one was to be sold. The devisees accepted, and ten years later, in 1905, the son to whom farm No. 2 was devised, sold and conveyed to this appellee. In the first item in the will, testator gave to his wife the use and occupancy of the dwelling in which he resided, with the appurtenances, during her widowhood, together with certain articles of personal property absolutely, the latter including one horse and two cows. Immediately following came the devise of farm No. 1 to his son Christian B. at a valuation. The devise of farm No. 2 at its valuation followed next. It is not until we reach the eighth item that we find any direction as to charges upon these farms. This item reads as follows: "I expressly order and direct that Five Thousand Dollars ($5,000) of the purchase money of my farm herein designated as tract No. 1, whether taken by my son Christian at the price I have placed on it, or sold by my executors, and Five Thousand Dollars ($5,000) of the purchase money of my farm herein designated as tract No. 2 whether taken by my son Edwin at the price I have placed upon it, or sold by my executors, shall respectively be and remain as liens and charges on my said two farms respectively (the sum of Five Thousand Dollars being thus charged on each farm), for and during the natural lifetime of my beloved wife, Malinda, the interest thereof respectively, at five per cent per annum be annually and regularly paid to her by the respective owners of said farm on the 1st day of April in each and every year, for and during the period aforesaid, and · the principal sum at and immediately after her death to be paid by the respective owners of said farm in six equal shares, etc. . . . The owners of the farm herein designated as Nos. 1

and 2 are yearly to put in the stable on the premises occupied by my wife, so long as she remains my widow, as much hay as she may need to feed one horse and two cows, without charge. And my said wife, during said period, shall have the right to take from the orchards on said farm as many apples as she may desire for her use, without charge." The present controversy has regard simply to the provision as to the hay to be furnished the widow. In April, 1903, the widow removed from the house provided for her in the will, rented it out, and went to live elsewhere with a married daughter. So long as she resided in this house the sons owning the farms regularly stored in the stable on the premises the required amount of hay, but after she removed they discontinued doing so. The son owning farm No. 2, sold to the appellee, March 30, 1905. During the years 1905 and 1906, the widow continuing to reside elsewhere than on the premises devised to her, the appellee stored no hay for her. The widow presented her petition to the orphans' court in which she set out the provision of the will, and claiming that the provision relating to the hay was a charge upon the several farms, asked that the purchaser of No. 2 farm, this appellee, be required to pay her in money the equivalent of the hay which he had failed to deliver during the years 1905 and 1906. The case raised two questions: first, was the provision for the widow as to the hay a charge upon the land? and, second, if so, had the owner of the farm been released from this obligation for the period claimed, by any act of the widow? The learned judge of the orphans' court was of opinion that the obligation to furnish the hay was a charge upon the land; and in this he was sustained by a majority in the Superior Court. In this view we also concur. The circumstance that the provision in the will is accompanied by no express words making it a charge on the land, and follows immediately upon one in relation to deferred payments, in which the latter are specifically charged, makes somewhat against this view; since it may be argued with much force that the testator knowing how to subject his lands to an express charge, his omission to do so expressly in this particular case indicates that he had no intention to make the provi-

sion a charge. But against this, and as we think overcoming it, is the direction that the hay is to be furnished by the owners of the farm. This duty is not put upon the sons personally, who were the devisees, but upon those who should come into the ownership, whether through acceptance or nonacceptance of the devisees, and was to continue during the wife's widowhood. That testator had no other expectation than that the hay would be furnished out of the annual crops produced on the several farms, is too manifest to be open to dispute. He certainly could have anticipated no conditions which would make it to the advantage of the owners of the farms to supply the hay from any other source. Had he directed in express terms that the hay was to be furnished out of the proceeds of the farms annually by the owners, no question could have arisen as to whether the provision was a charge on the land. In such case the purpose to make the land stand as security would have to be conceded: Gibson's App., 25 Pa. 191; Swoope's App., 27 Pa. 58; Gilbert's App., 85 Pa. 347. We cannot but regard the language here used as a fair equivalent to a direct expression that the farms were to yield the amount annually. Certainly the testator so intended. Any other construction of his will would expose to defeat the bounty he provided for his widow, and which he intended not as an illusive thing, but as something substantial and secure.

The second question is one which affords ground for fair dispute; but a careful examination of the will has satisfied us that the better view, that is, the one which most clearly interprets testator's meaning, is adverse to the widow's present contention. That the case has peculiar resemblance in some of its features to that of Santee v. Santee, 64 Pa. 473, must be conceded; but there are marked distinctions not only in the language of the several wills but in the conditions which were being provided for. "As we have said over and over, precedents in will cases in interpretation of the intent of the testator are seldom of use to us. They are rarely in precisely the same language, the property devised is not the same, the objects of his bounty stand in different relations to him and each other:" Graham v. Abbott, 208 Pa. 68. The case of Santee v.

Santee, supra, stands as authority for the point there decided, that where it is directed that certain specific articles shall be furnished a widow for her support and maintenance, the provision is not conditioned on her continued occupancy of the premises set apart to her in the will, except as such condition appears from the will. This has been followed in a number of cases, the most recent being Walters's Est., 197 Pa. 555, where the doctrine is explicitly reasserted. As was said in Santee v. Santee, 64 Pa. 473, the law will not infer " a foolish and bad condition that she (the widow) should be supported only so long as she remained in that dwelling. It would be as much as to say, no matter how inconvenient or uncomfortable her residence there might become, she must abide there or lose her support." But beyond this the case rules nothing that has application here. When testator's widow changed her residence, she did not by that fact forfeit her right to the hay; there is abundant reason and authority for this. We think, however, that there is yet to be found in this will a condition or limitation which must prove fatal to the widow's present claim. The language of the will is, "The owners of the farm herein designated as tracts No. 1 and 2 are yearly to put in the stable on the premises occupied by my wife, so long as she remains my widow, as much hay as she may need to feed one horse and two cows, without charge." In a preceding clause testator had given his wife one horse and two cows. He anticipated that she would continue to occupy the premises devised to her, without requiring it, however. He well understood that so long as she continued to occupy the premises he gave her, she would require for her personal comfort and convenience just such articles of live stock as those he gave her, and even though she might change her place of residence, he anticipated that she would still desire to retain some or all of them, for the reason that she had always been accustomed to have them. It is to be remembered that she was a farmer's wife, and her experience, habits and associations must have been in the testator's mind. To what extent she would need them under other conditions than those he had provided, of course he could not tell. Of that she was to be the sole judge. The provision he

made for her was ample under any conditions. If she remained on her own premises, she would need all he gave her in the way of live stock; under other conditions less might be sufficient. This was a matter to be determined by her own view of her own need. The horse and two cows he gave to her absolutely, to do with as she chose. Her estate to that extent was increased. But he was giving her something which if she chose to retain would be a charge upon the income he had provided for her. This he did not want, and he provided against it by requiring the owners of the farm to furnish her annually with as much hay as she would need for the support of the live stock he had given her. The evident purpose was not to swell her estate by giving her annually of the proceeds of these farms a certain quantum of the crops raised, but simply to relieve her of the burden of the expense incident to the support of the live stock he had given for her comfort and convenience. He could not have intended that keeping no stock she could commute this by accepting its equivalent in money and thus increase her estate. The key word to his intentions as expressed in the will is, "need." Her necessities with respect to the amount of hay she was to be entitled to receive had relation to the number of animals she kept; the amount was not to exceed that required for the support of three, but it might be less, depending on her own wishes and views as to the number of animals she chose to keep. We find much support for this view in the particular standard of measurement of the amount which the will directs shall be furnished. Had it been testator's purpose to give the hay to the widow under any and all circumstances, to be hers to do with as she chose, it is not likely that testator would have adopted the phraseology we have here. He was accustomed to raise and market hay. When selling he certainly never measured hay by any such standard as he here adopts, namely, what would be required to keep a horse or a cow for a given period; unless he had a method peculiar to himself, he sold by the ton. Had he required in this case that the farms were severally to yield to his widow say two tons of hay annually, the gift would have been as absolute and unqualified as the gift of the stock itself; but

it is not so.    It is a gift of so much as she may need, a certain purpose being in view.    That purpose failing in part, the amount required is correspondingly reduced; failing entirely, the gift is suspended until the necessity returns.    This we think the fairest and most reasonable construction of the will as an expression of the testator's purpose.    It does not appear that during any portion of the two years in which the ownership of the farm has been in the appellee, the widow kept any live stock at all.    We are clearly of opinion that she was entitled to the hay only as she needed it for the purpose to which we have referred, and that she is entitled to recover only as she shows that she did need it, and that because of respondent's failure to supply it she was compelled to secure it elsewhere.    The reasons for our conclusions differ from those which obtained in the Superior Court, but they are so convincing to us that upon them and them alone we rest our decision of the case.    The decree of the Superior Court is affirmed, and the appeal is dismissed at the costs of appellant.