## Smith et al. v. Baldwin et al.

*Wills—Devise—Charge on land—Debt.*

1. Where a mother devises a farm to a son with direction that he "be charged with all debts that have been contracted for his benefit," and it appears that at the time the will was executed the mother was jointly liable with the son for a debt contracted for his benefit, the debt will be construed as a charge on the land devised to the son.

2. Such construction of the will is confirmed by the fact that testatrix directed that her debts, funeral and administration expenses should be paid out of her personal estate, and in devises of farms to two other sons, directed that they should be "taken" by the devisees "without encumbrances."

3. An intention to charge a debt upon other than the personal estate may be implied from a sound interpretation of the whole will.

Exceptions to sheriff's schedule of distribution. C. P. Greene Co., June T., 1923, No. 22.

*O. R. Hughes*, for exceptant.

*A. M. Nichols*, for sheriff and plaintiff in foreign attachment.

RAY, P. J., Aug. 18, 1924.—By virtue of the above-mentioned writ of *fieri facias*, at No. 22, June Term, 1923, the sheriff levied on and sold, as the property of the defendants in the writ, a certain tract of land, situate in Richhill Township, Greene County, Pennsylvania, for the price or sum of $4000. On Sept. 10, 1923, the sheriff returned the said writ, together with a schedule of distribution, which was confirmed *nisi*. Thereupon Ella M. Sowers, claiming to be a judgment creditor of the defendant, I. C. Baldwin, filed exceptions

to the sheriff's schedule of distribution, and especially to his distribution to W. H. Hagans and I. H. Isleman, based on foreign attachment at No. 98, March Term, 1923, and to G. F. Watson and F. J. Watson, based on foreign attachment at No. 99, March Term, 1923. The several parties in interest, by their attorneys, in the nature of a case stated, have agreed upon the facts upon which the court is to determine the question at issue between them. The question to be determined by the court will appear from the case stated, which is as follows:

"The parties to this case stated, by their attorneys, agree to the following facts:

"1. That Susannah Baldwin, of Cameron, Marshall County, West Virginia, died Jan. 27, 1922, leaving a last will and testament, dated Aug. 11, 1921, after her death duly proved and registered in the Office of the Clerk of the County Court of the said County of Marshall and State of West Virginia, and a duly certified copy of which said will was filed Feb. 15, 1922, in the Register's Office of Greene County, Pennsylvania, in Will Book vol. 15, page 480, a copy of which said will is, hereto attached as a part hereof and marked 'Exhibit A.'

"2. That at the time of her death the said Susannah Baldwin was seized, *inter alia*, of the hereinafter described real estate, against which had been filed as a lien prior to her death the above stated judgment at No. 117, December Term, 1920.

"3. That in and by the said last will and testament the said testatrix devised, in paragraph fourth thereof, as follows: 'Fourth. I give, devise and bequeath to my son, I. C. Baldwin, the farm on which he resided before he moved to Cameron, West Virginia; said farm being situated on the south side of Wheeling Creek, in Richhill Township, Greene County, Pennsylvania, and adjoins the Parson farm and others. The said I. C. Baldwin to be charged with all debts that have been contracted for his benefit;' and that this farm was sold under the above execution.

"4. That on April 4, 1918, the said I. C. Baldwin and the said Susannah Baldwin duly executed and delivered to Ella M. Sowers, of Richhill Township, Greene County, Pennsylvania, a judgment exemption note in the sum of five hundred ($500.00) dollars, payable six months after date, with interest; that the said note was contracted for, and the proceeds of the said note was used solely for, the benefit of I. C. Baldwin; and that judgment was entered on the said note at No. 71, September Term, 1923, in the Court of Common Pleas of Greene County, Pennsylvania, against the said I. C. Baldwin, surviving Susannah Baldwin, deceased.

"5. That no payments were ever made upon the said note, and that at the time of the death of the said Susannah Baldwin, the amount of the said note and interest as aforesaid were due and owing to Ella M. Sowers.

"6. That Dan W. Phillips and A. M. Nichols, his attorney, both had notice that Ella M. Sowers claimed that the *debt evidenced* by her said note *was a charge upon the land* sold under and by virtue of the writ of *fieri facias* at the above number and term, but not until after the sale; and that request was made to them prior to the return of said sale that her debt be paid in full out of the proceeds of said sale before the payment of any debt of the said I. C. Baldwin, for which the said Susannah Baldwin was not surety, other than the one entered before Susannah Baldwin's death, at No. 117, December Term, 1920.

"The following question is, therefore, submitted for the determination of your honorable court:

Smith et al. *v.* Baldwin et al.

"1. Whether or not the said note of Ella M. Sowers is made a charge upon the land devised to the said I. C. Baldwin in paragraph 'fourth' of the will of the said Susannah Baldwin?

"If the court shall be of the opinion that it was the intention of the said testatrix to make the payment of the said note a charge upon the land so devised to I. C. Baldwin in paragraph 'fourth' of the said will as aforesaid, then the exceptions filed in the above styled case are to be sustained, and the schedule of distribution amended so that, after payment of the judgment upon which the said property was sold—judgment in favor of Samuel M. Smith and Charity M. Smith, at No. 117, December Term, 1920—together with costs and taxes, that there be next applied, from the balance remaining for distribution, to the debt of the said Ella M. Sowers a sum sufficient, to wit, $693.60, to pay the same in full, debt, interest and costs, and that the balance distributed, *pro rata*, to the judgments on foreign attachments at No. 98, March Term, 1923, and No. 99, March Term, 1923, in the said Court of Common Pleas of Greene County, Pennsylvania.

"If the court shall be of the opinion that the debt of the said Ella M. Sowers had not been made, and was not at the time of the said sale a charge upon the land so sold as aforesaid, then the said exceptions to be dismissed. Costs to be paid by losing party. With the right, and it is hereby reserved to each or either of the parties hereto, to appeal from the decision of the court."

This case stated is signed by O. R. Hughes, attorney for Ella M. Sowers, exceptant; and by A. M. Nichols, attorney for W. H. Hagans and I. W. Isleman, No. 98, March Term, 1923, and as attorney for G. F. Watson and F. J. Watson, No. 99, March Term, 1923.

The only question submitted by the case stated is whether or not Susannah Baldwin, by her last will and testament, dated Aug. 11, 1921, made the indebtedness evidenced by the note given by I. C. Baldwin, her son, and herself, dated April 4. 1918, to Ella M. Sowers, the exceptant, a charge upon the tract of land devised to her said son, the proceeds of which tract of land are now for distribution. If the testatrix did make the said note a charge upon the said tract of land devised to her said son, then the exceptions to the sheriff's distribution should be sustained and the schedule of distribution amended accordingly.

In the interpretation of a will, the primary purpose is to ascertain the intention of the testator in relation to the bequest, or devise, called in question. The testator's intention must govern in every case, if it can be fairly ascertained from the will. The intention may be determined from the language used in making the specific bequest, or devise; or it may be determined from the four corners of the will. That is, from the will, considered in its entirety. A testator either specifically or by implication may make a charge upon land in the hands of his devisee. In Ripple *v.* Ripple, 1 Rawle, 386, it is held: "Although land devised is not expressly charged with the maintenance of infirm children of the testator, yet, if such an intention can be clearly collected from all the parts of the will, considered in reference to the testator's circumstances, the charge will attach upon the land and follow it into the hands of subsequent purchasers."

In delivering the opinion in this case, Gibson, C. J., says (page 389) : "A legacy may undoubtedly be charged upon land by implication, as was done in Nichols *v.* Postlethwaite, 2 Dall. 131; Hassanclever *v.* Tucker, 2 Binn. 526; Witman *v.* Norton, 5 Binn. 395, and Dobbins *v.* Stevens, 17 S. & R. 13. No form of words is necessary to produce the effect; and, where the intent is manifest, courts are bound to carry it into execution."

In Gilbert's Appeal, Tarr's Estate, 85 Pa. 347, it is held: "Testator gave certain land to one of his sons at $33 per acre, the proceeds thereof to be divided into eight equal shares and distributed equally among his sons and daughters. Held, that it was the intent of the testator that the land should be charged with the payment of these legacies."

Woodward, J., delivering the opinion in this case, says (page 350) : "While, in order to make legacies a charge upon land, it must be found that such was the testator's intention, still it is not necessary that its ascertainment should rest on direct expression. It is enough if the intention appear by natural and obvious implication from the provisions of the will. No form of words is necessary to produce the effect; and, where the intent is manifest, courts are bound to carry it into execution: Gibson, C. J., in Ripple *v.* Ripple, 1 Rawle, 386. There, a testator had devised three-fourths of a tract of land to his son, followed by this direction: 'My son Philip is to keep and provide for my beloved wife and my eldest daughters, Catherine and Elizabeth, during their natural lives.' It was held that, although land devised is not expressly charged with the maintenance of infirm children of the testator, yet, if such an intention can be clearly collected from all the parts of the will, considered in reference to the testator's circumstances, the charge will attach upon the land and follow it into the hands of subsequent purchasers."

In Wise's Estate, 188 Pa. 258, McIlvaine, J., on whose opinion the judgment of the lower court was affirmed, says: "If it appears from the language of the will that the testator intended to couple the payment of the legacy by the devisee with the devise of the land, so that the payment is to be made because or as a condition on which the devise has been made, then the real estate devised is, in equity, chargeable with the payment of the legacy. . . . The question whether a legacy is a charge upon real estate is one of intention. If the actual intention appears, no form of words is necessary. Unless technical words, by which rules of property are fixed, have been used, the intention is to be gathered from the whole will."

In Sharp's Estate, 7 Pa. Superior Ct. 372, the second paragraph of the syllabus reads: "Testator gave the use of two-thirds of a farm to E. and of one-third of the farm to F., with directions to E. to pay $30 and F. $15 to testator's widow annually while she remains his widow; the farm being sold for the payments of debts of decedent, there were some four years of arrears of payments due the widow prior to a remarriage. Held, that the will shows a clear intention to create a charge upon the land devised, and the widow is entitled to a portion of the balance of the fund, after payment of debts, equal to the amount of the annuities for the period of widowhood."

In the opinion in this case, Orlady, J., says (page 375) : "It was the evident intention of the testator to secure the sum of $45 annually for his widow, and the manner in which he apportioned the amount between his daughters to correspond to the share of the farm devised to each, and continuing the liability beyond the life of William Sharp, shows a clear intention to create a charge upon the land devised and to substitute this annual amount during widowhood for her dower right, if she would accept the provisions of the will.

"He had in his mind at the time of making his will all the persons who would be interested in his estate had he died intestate, and he intended to secure to each what is specially devised, so that to pass the whole of his estate to his daughters without payment of legacy or dower to the widow would be doing violence to his intentions as gathered from his will."

In O'Leary's Estate, 2 D. & C. 547, it is held: "Testator, after directing payment of his debts and funeral expenses and certain sums for masses,

directed his wife, as executrix and residuary beneficiary, to maintain and support his brother. No limitation as to amount, time or place was set upon the bequest for the benefit of the brother, and it was expressly made a charge upon the gift to the wife. Held, that the bequest for maintenance of the brother was on a plane higher than the benefactions to the wife, and the entire estate, real and personal, that came into her hands, either as executrix or as residuary beneficiary, was charged primarily with payment of such sums as might be necessary for his support."

In Kleinhenz's Estate, 45 Pitts. L. J. 306, the clause of the will in dispute reads as follows: "I give and bequeath to my daughter Magdelena that certain real estate (describing it) . . . and my aforesaid daughter Magdelena shall pay Margaretha, daughter of my deceased son, Andrew Kleinhenz, the aforesaid sum of $600.00 by me bequeathed to the aforesaid Margaretha, provided the said Margaretha shall fulfill the conditions aforesaid." In the opinion in this case, Hawkins, P. J., says: "The legacy to Margaretha must, by necessary implication, be considered to have been a charge upon Magdelena's devise. . . . If Magdelena should have become insolvent, her whole estate, including the devise, might be swept away without a remedy to protect Margaretha or remaindermen from loss of this principal fund its product. In order, therefore, to make the benefits intended for these parties reasonably secure, it is obviously essential to treat it as having been charged upon the devise; and this is entirely consistent with the will. The direction to pay, immediately coupled with the devise, shows that in the testator's mind they were connected subjects and one was intended to be the source of the other. 'A legacy may undoubtedly be charged on land by implication. No form of words is necessary to produce the effect; and, where the intent is manifest, courts are bound to carry it into execution:' Ripple *v.* Ripple, 1 Rawle, 386."

In Shaffer's Estate, 262 Pa. 15, it is held:

"1. A testator may direct upon whom or upon what property an obligation of his shall ultimately fall, and those who accept his bounty must do so *cum onere*.

"2. An intention to charge a debt upon other than the personal estate may be implied from a sound interpretation of the whole will.

"3. No particular words are necessary to create a charge on land; anything in the will may show such an intention.

"4. In construing a will, the court should, as far as may be, put itself in the position of the testator at the time he made it."

In the light of these authorities, as well as of many others of like import, we will consided the will in question.

The testatrix in the case at bar, in the first paragraph of her will, directs that all of her just debts and funeral expenses, as well as the costs of administration, shall be paid out of her personal estate. By the second paragraph of her said will, she devises and bequeaths to her son, G. M. Baldwin, a certain farm therein described, "to be taken by him without encumbrance." By the third paragraph of her said will, she devises and bequeaths to her son, Claire B. Baldwin, two certain tracts of land therein described, both farms "to be taken by Claire B. Baldwin without encumbrances." By the fourth paragraph of her will, quoted in full in the case stated, she gave, devised and bequeathed to her son, I. C. Baldwin, a certain farm which "adjoins the Parson farm and others. The said I. C. Baldwin to be charged with all debts that have been contracted for his benefit."

Her will bears date of Aug. 11, 1921. On April 4, 1918, more than three years prior to the date of her will, the said I. C. Baldwin, her son, and the

Smith et al. *v.* Baldwin et al.

testatrix herself executed and delivered to Ella M. Sowers, the exceptant, a judgment exemption note for $500, payable six months after date, with interest. This note was contracted for I. C. Baldwin, her said son, and the proceeds thereof were used solely for his benefit. No payment has ever been made upon the said note, and at the time of the death of the testatrix, the full amount of said note, together with interest, was due and owing to the said payee.

The apparent purpose and intention of the testatrix, as we gather it from the four corners of her will, was to shield her personal estate from the payment of any debt of her son, I. C. Baldwin, for which she was also liable. Doubtless, at the time of making her will, and especially the fourth paragraph thereof, she had in mind the note given Ella M. Sowers, the exceptant, for which she was liable along with I. C. Baldwin, and which had been contracted for his benefit and the proceeds thereof had been used solely by him. The farm devised in the second paragraph to a son is "to be taken by him without encumbrances;" and the two farms in the third paragraph to another son are "to be taken by him without encumbrances." But when the testatrix comes to the fourth paragraph of her will, in which she devised the farm to her son, I. C. Baldwin, she undoubtedly has a different purpose of mind, and directs that he be charged "with all debts that have been contracted for his benefit." In other words, it was as much her intention, in our opinion, to charge the land devised to her said son, I. C. Baldwin, with encumbrances as it was in the other two instances to vest the land devised to her sons without encumbrances. Not only did she desire to guard against her personal estate being applied otherwise than as she directed in her will, but she also desired to protect the creditors of her said son from loss on "all debts that had been contracted for his benefit" on which she was liable. To do this she burdened this particular farm with the payment of the Sowers's obligation, making it a charge thereon. Her said son, I. C. Baldwin, having accepted the devise of the said farm to him did so *cum onere,* as was said in Shaffer's Estate, 262 Pa. 15. This interpretation of her will, as it seems to us, is in full and complete harmony with the purpose and intent of the testatrix as gathered from its four corners. It is the natural and obvious implication from the provisions of the will. The exceptions to the schedule of distribution are sustained.

And now, Aug. 18, 1924, this matter having come on to be heard, after argument by counsel and due consideration, the court being of opinion that the said note of Ella M. Sowers was a charge upon the land devised to I. C. Baldwin in the fourth paragraph of her will, it is ordered and directed that the exceptions to the sheriff's schedule of distribution be and they hereby are sustained, and the schedule of distribution is so amended that, after payment in full, debt, interest and costs of judgment at No. 117, December Term, 1920, there shall next be applied to the judgment in favor of Ella M. Sowers, at No. 71, December Term, 1923, the sum of $693.60, in full of debt, interest, costs and commission, and the balance then remaining shall be applied *pro rata* to the judgments in foreign attachment, at Nos. 198 and 199, March Term, 1923, respectively; and, subject to such amendment, the sheriff's schedule of distribution is confirmed absolutely. The costs of this proceeding to be paid by the attaching creditors.

From S. M. Williamson, Waynesburg, Pa.