## United Fruit Company, Appellant, *v.* Bisese.

*Contract—Estoppel—Defense—Specific ground of objection.*

The allegation of any specific ground of objection, of defense, or of excuse for the nonperformance of a contract, operates as a waiver of all others, and as an estoppel by the act of the party, against setting up any other ground.

Where the purchaser of fruit refuses to pay for it solely on the ground that the fruit was frozen on its arrival, he cannot subsequently in an action against him for the purchase money allege as a ground for refusal that the quantity sent was in excess of the quantity ordered.

*Contract—Sale—Delivery to carrier—Fruit.*

Where fruit is delivered to a carrier in good merchantable condition packed or otherwise protected in the manner customary in the trade, the seller's responsibility then ends, and that of the carrier or of the purchaser begins.

Argued March 11, 1904. Appeal, No. 24, Feb. T., 1904, by plaintiff, from judgment of C. P. Lycoming Co., Sept. T., 1903, No. 145, on verdict for defendants in case of United Fruit Company v. Pasquale Bisese and Salvatore Bisese, copartners trading as P. Bisese & Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for goods sold and delivered. Before HART, P. J. The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[It appears that on December 12, the defendants wrote a letter to the plaintiff, in which they say that the bananas arrived.

He says the bananas arrived in Williamsport Thursday afternoon, and by reference to the calendar, Thursday would be the 10th of December, which would be two days after the shipment. He says: "and they would not place them where I could unload until six o'clock in the evening and when, I opened the car and examined the fruit, and the fruit was entirely frozen, while looking around the bananas I found a thermometer and that was down to 37 degrees, so I told the railroad company I refused the bananas. They told me the bananas left Philadelphia Wednesday and I told them it could not be, for I had the bill for the bananas here on Wednesday, so I wish you would look after and make the railroad company pay for them, for I won't accept them at all. Yours truly, P. Bisese & Co."

Now it is claimed on the part of the plaintiff that this letter was a waiver on the part of the defendants of the fact of their not complying with the order. We cannot say this to you as a matter of law. We say to you that it was the duty on the part of the plaintiff in this case to ship to this defendant the amount of bananas which he ordered and they were not obliged to receive a larger amount of bananas than they ordered shipped; but they could by subsequent arrangement waive that condition in their order and this is a matter for the jury to determine under all the evidence in this case.] [1]

[In the first place it is for you to determine the condition of these bananas. That is a matter which may explain to some extent the letter which they have written and then the time when they were received, and the conditions under which they were received. All these matters enter into this question of whether there was a waiver here whether these persons had sufficient opportunity to examine this fruit—to count them so as to know whether there were 200, and whether they were fully informed of the situation at the time. You must be satisfied that when the defendant wrote this letter that they were fully informed of the exact situation. I do not recall that there is anything in this letter that would indicate the number of bananas that were there. Of course they refused to receive any of them; they found the condition in which they were and it might possibly be that they never did count them. That is a matter I will leave to the jury to gather from this evidence.

Of course if these people knew at the time the bananas were received and wrote this letter with full information of the situation, then this letter could be construed, in connection with all the evidence, as a waiver of their right to refuse to receive more than the 150 bunches of bananas which they ordered. Of course, if the jury believe under all the evidence in this case that these parties waived this right which they had to demand shipment of only 150 bunches and no more, then the plaintiff would be entitled to recover in this case, but if they did not waive that, then the plaintiff would not be entitled to recover.]  [2]

Defendant presented these points :

1. The undisputed evidence in this case being that defendants ordered from plaintiff company 150 bunches (seconds) bananas, delivered on car at Philadelphia, Pennsylvania, the delivery on car at Philadelphia, Pennsylvania, of 200 bunches of bananas of the kind and quality ordered, the 150 bunches ordered not being separated from the 200 bunches placed in the car, was not such a compliance with the terms of the order, as to enable plaintiff company to maintain an action against defendants, either for the 150 bunches ordered or the 200 bunches which plaintiffs admit was put in the car consigned to defendants.    *Answer :* If the jury believes from the evidence the facts here stated, and believes from the evidence that the defendant did not waive this noncompliance with their order, then we affirm this point. [3]

5. Under all the evidence in this case, the verdict should be for defendants.    *Answer :* This point we refuse, but we reserve the legal question of whether there is any evidence under which the plaintiff is entitled to recover. [4]

Verdict and judgment for defendants.    Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Thomas M. B. Hicks,* for appellant.—The fact that the refusal to accept the shipment was upon the sole and express ground that the bananas were frozen, being undisputed, it was the duty of the court to declare the legal effect thereof : Wan-

namaker v. Burke, 111 Pa. 423, 430; McFall v. Ice Co., 123 Pa. 259, 261.   It was likewise the duty of the court to interpret and declare the legal effect of the letter of December 12, from the defendants to the plaintiff, communicating their refusal of the proffered delivery and the ground of such refusal: Sidwell v. Evans, 1 P. & W. 383, 386; Miller v. Fichthorn, 31 Pa. 252; Holmes v. Oil Co., 138 Pa. 546, 547; Home B. & L. Assn. v. Patrick, 140 Pa. 405, 419.

When the refusal to accept purchased goods is based upon particular objections, formally and deliberately stated, all other objections are deemed waived; and the vendor, in order to recover the price, need only prove compliance with the contract of sale in the particulars covered by the stated objections: Littlejohn v. Shaw, 159 N. Y. 188 (53 N. E. Repr. 810).

*Mortimer C. Rhone,* for appellee.

OPINION BY SMITH, J., May 10, 1904:

The contract, the performance tendered by the plaintiff, and the ground on which the defendants refused to accept this tender, are fully exhibited in written communications between the parties.   The construction of these is for the court.

First is an order from the defendants to the plaintiff, dated December 6, 1902, for 150 bunches of bananas.   The plaintiff shipped 200 bunches, and sent the defendants an invoice of this shipment, dated December 8, followed by a letter, dated December 9, stating that 200 had been shipped, instead of 150.   December 12 the defendants wrote to the plaintiff that the bananas had arrived on the preceding day (Thursday), but were frozen; that they were told that the goods had left Philadelphia on Wednesday, and had replied that that could not be, as they had the bill of them on Wednesday.   The defendants refused to receive the bananas; the plaintiff, being notified of this by the railroad company, December 12, by telephone, refused to direct any other disposition of them, and the company, unable to dispose of them, finally threw them out, spoiled.   December 12 the plaintiff wrote to the defendants, giving details relating to the shipment, and stating that the fruit had been sold delivered in Philadelphia. January 28, 1903, the plaintiff sent the defendants a statement

of account, and asked immediate attention to it.    January 29 the defendants replied that the bill had been refused, that they did not intend to pay it, and that the plaintiff could " fight it out with the railroad company."    January 30 the plaintiff wrote that the fruit had been delivered to the railroad company in good condition, and that any differences with the company were to be fought out by the defendants.    February 4 the defendants answered that they had accepted nothing, and had no claim against the railroad company.    February 5 and March 21 the plaintiff again wrote requesting payment, but no response appears to have been made to either letter.

While it does not appear when the plaintiff's letter of December 9 was received, the defendants, on the arrival of the fruit, had the invoice showing the shipment of 200 bunches ; and Salvatore Bisese, one of the defendants, testified that " when the bill arrived there were 200 bunches instead of 150 bunches, so we growled a little bit."    No " growl," however, relating to the excess in the quantity shipped, ever reached the plaintiff, though it clearly appears that the excess was known to the defendants when the fruit arrived.    Throughout the correspondence no hint was given by the defendants that they declined to accept because of the excess in quantity, and that this excess was not deemed a ground of objection is further indicated by a telegram from the defendants to the plaintiff, on the day on which the bananas were shipped, ordering 250 bunches more.    It fully appears that the only reason, communicated to the plaintiff, for refusing acceptance, was that the fruit was frozen on its arrival.

Under the general rule of law the delivery of the fruit to the carrier was constructively a delivery to the defendants, and in the absence of any legal defense the latter were liable for its value.    If they had any defense it was their duty to make it known, promptly and fully, and with no concealment or omission by which the consignor might be misled.    The plaintiff had a right to know the precise grounds on which its right to payment was challenged, that such action might be taken as in its judgment the situation required.    The case falls clearly within the class in which the allegation of any specific ground of objection, of defense, or of excuse for the nonperformance of a contract operates as a waiver of all others, and as an estoppel,

by the act of the party, against setting up any other ground: Messmore v. Morrison, 172 Pa. 300; Western, etc., Pipe Lines v. Home Ins. Co., 145 Pa. 346; Niagara Fire Ins. Co. v. Miller, 120 Pa. 504. Here the defendants rested their refusal to accept and pay for the fruit shipped to them, so far as it was communicated to the plaintiff, solely on the ground that it had been frozen; there was no intimation, on their part, of an unwillingness to accept the full quantity shipped. The plaintiff's action in the premises was necessarily based on the ground of refusal thus given by the defendants. Whether a more advantageous course might have been pursued, had notice been given that the defendants refused to accept the quantity shipped, is not material; the plaintiff had a right to the opportunity, and was deprived of it by the act of the defendants in confining the ground of refusal to the condition of the fruit. The letters of the defendants to the plaintiff, written with full knowledge that 200 bunches had been shipped, must be construed as a refusal to accept on the ground that the fruit was frozen and as a waiver of the right to refuse acceptance on the ground of excess in quantity.

From the evidence the defense set up by the defendants is plainly untenable. If the bananas were delivered to the carrier in good merchantable condition, packed or otherwise protected in the manner customary in the trade, the plaintiff's responsibility was then ended, and that of the carrier, or of the defendants, began. The defendants can look only to the carrier for compensation for loss arising from negligence on the part of the latter; and whether there was loss due to such negligence was a question with which the plaintiff was not concerned.

Judgment reversed and venire de novo awarded.