Argued December 3, 1924.
Answering an inquiry from plaintiff, defendant wrote that it would sell to plaintiff two complete heads of its patented No. 3 Planetary Thread Milling Machine, for $1,600 each, stating that "all the working parts of the machine are practically in the heads." Twelve days later plaintiff Wrote, "Ship via our truck to us . . . . . . two No. 3 Hall Planetary Heads with sprocket, chain and weight, price $1,600 each." Evidently this resulted in negotiations between the parties as to what was intended to be included in the offer, but the details thereof were exclude by the court below on the objection of defendant. We can only infer, therefore, that for some *Page 214 
reason the order had not been accepted when plaintiff again wrote to defendant on a later date: "Concerning the above order, confirming conversation between our Mr. Lowey and yourself, yesterday morning, please note that the following is our understanding of the above order and what you will furnish us. The two No. 3 Hall Planetary Heads with sprocket chain and weight will also be fitted up with taper attachment which willallow us to mill taper threads in pipe flanges. Please acknowledge receipt of this communication." The next day defendant replied "Answer yours of March 25th. Your letter is correct. We will furnish the return weights, straps, sprockets and chain with the No. 3 Planetary Thread Miller Heads on your order." This closed the contract between the parties, and plaintiff thereupon paid the purchase price, before the machines were set up and tested.
The heads were furnished by defendant and installed by plaintiff on a base prepared by the latter. It was soon learned that they would not "mill taper threads in pipe flanges." Each alleged it was the fault of the other, but we need not consider this dispute since the jury, under evidence and a charge not attacked by any assignment of error touching this point, have found that defendant was alone to blame. Working together on the machines, each of the parties endeavored to make them "mill taper threads," but they never would do this satisfactorily. Finally, plaintiff tendered a return of the machines, defendant refused to accept them, and plaintiff brought this suit in rescission of the contract, averring the words italicized constituted a warranty which had not been complied with. The jury found a verdict for plaintiff and defendant appeals.
In this court no question is raised in regard to the evidence, and but three touching the charge: (1) Was there a warranty? (2) If so, was there a consideration for it? and (3) Was not the right to rescind lost by plaintiff's delay in tendering a return of the machines? What *Page 215 
has been said disposes of the second of these questions, since, so far as this record discloses, but a single contract was made, and in it defendant stated that the machines "will allow us [plaintiff] to mill taper threads in pipe flanges." At one stage, some point was made that these words related only to the taper attachment, which was not mentioned in the first letter written by defendant; but, as the attachment was an integral part of the heads themselves, this suggestion need not be further considered.
Do the words last quoted constitute an express warranty? None can be implied, for the heads were patented and were sold by their "patent or other trade name": section 15 of the Sales Act of May 19, 1915, P. L. 543, 547. The existence of the statutory provision referred to is, however, an important element in determining whether or not an express warranty was intended. Plaintiff wanted heads which would "mill taper threads in pipe flanges." Defendant knew, or is presumed to know, whether this could be accomplished by those it had for sale; plaintiff did not, because ignorant of the construction of the heads. Consequently it was important for the latter to be protected regarding this, not only because otherwise the heads would be useless for the purpose desired to be accomplished, but also because considerable money would have to be expended before plaintiff could know whether or not they would work satisfactorily; hence the conversation mentioned in the letter specifying the understanding of the parties, which was assented to by defendant, that the heads, when installed, "will allow us to mill taper threads in pipe flanges." This statement is an express "affirmation of fact," which had a "natural tendency . . . . . . to induce the buyer to purchase" the heads; the two together constituting, therefore, "an express warranty": section 12 of the Sales Act, supra.
Some point is made of the use of the word "allow" in the clause "will allow us to mill taper threads in pipe *Page 216 
flanges"; the case is strengthened, however, and not weakened by the employment of that word. Plaintiff did not care what somebody else could or could not do with the heads it proposed to buy; it wanted heads which would "allow us," plaintiffs, to do the kind of work required. As plaintiff was itself to supply the other necessary parts of the machines, it was, of course, responsible for them, and hence the warranty was only that the heads would "allow us" to do the work required. In view of the situation thus outlined, the word "allow" was a most appropriate one, and the case is governed by Wolverine Glass Co. v. Miller, 279 Pa. 138, where the language "this machine is to be suitable for making a general line of wide mouth bottles" was held to constitute an express warranty. True, there were, as usual, circumstances in that case not appearing here; but, so far as concerns the present question, the essential facts are the same, and the principle there laid down is controlling. In each, the article supplied was a patented one, sold under its trade name; in each, other machinery had to be supplied in order to operate the article sold; in one, the article was to be "suitable" for a given purpose, — in the other, it was to "allow us" to accomplish the purpose; in each, it failed to do so; in the former case, recovery was sustained as upon an express warranty, — in this, it should be and now is allowed.
The final question in the case is: Was the right to rescind lost by plaintiff's delay in tendering a return of the heads, after knowing they would not do the work required? On this point the only applicable assignments allege error in not giving binding instructions for defendant; hence all the facts and inferences therefrom, tending to sustain plaintiff's contention, must be taken as true, and all those which would sustain defendant's, if depending on testimony only, must be rejected: Keck v. Pittsburgh, etc., Ry. Co., 271 Pa. 479. Thus viewed the facts are these: *Page 217 
The heads were bought in March, 1920, and were installed some four months later. When plaintiffs found they would not do the work required of them, because of mechanical imperfections, defendant was at once notified, and on a number of occasions (its president admits "from six to ten times . . . . . . over a period of six months"), it tried in every way it could think of to make them work. On May 7, 1921, its president said he was about to go to Texas, and on his return would call and make a demonstration of the machines. Some time later he did call; after making another futile attempt he admitted the heads would not work, and said they could be returned and defendant would refund the money paid, but not the expenses incurred in making the experiments. On several occasions shortly after this, plaintiff asked for shipping instructions regarding their return, and was requested to wait until defendant could sell them. On July 19, 1921, plaintiff again asked when defendant would accept them, and on August 24, 1921, renewed its request for shipping instructions. On this last date defendant admits their return was tendered. As plaintiff only sued for a refund of the money paid to defendant, it must be evident that, under the facts above specified, there is not even the slightest basis for defendant's present contention. On the contrary, assuming those facts to be true, as we must in considering this assignment, the delay was defendant's only.
The judgment of the court below is affirmed.