## Madison-Kipp Corporation *v.* Price Battery Corporation, Appellant.

Argued January 5, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Philip Werner Amram,* with him *Edward I. Weisberg* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.— The machine in question is accompanied by an implied warranty of fitness by reason of the fact that defendant expressly made known to the plaintiff the particular purpose for which the machine was required and defendant relied on plaintiff's skill.

There was an express warranty in the advertisement which became a part of the contract of sale: Montgomery F. & F. Co. v. Thread Milling Co., 282 Pa. 212; Keystone Mausoleum Co. v. Salzman, 72 Pa. Superior Ct. 437.

The conditional sales agreement did not affect the warranty: Meyer v. Motor Co., 106 Ohio 328, 28 A. L. R. 986.

There was an express agreement by reason of the previous agreement: Wolverine Glass Co. v. Miller, 279 Pa. 138.

*Shippen Lewis,* of *MacCoy, Evans, Hutchinson & Lewis,* with him *Richard W. Ledwith,* for appellee.— Though the machine was for a special purpose, there was no implied warranty, for the buyer not only bought a designated machine but bought it by its trade name: Hill v. Taylor, 304 Pa. 18.

The advertisement did not constitute an express warranty, for it stated no fact: Michelin T. Co. v. Schulz, 295 Pa. 140. Nor does the affidavit of defense aver a breach of this warranty, even if it was a warranty.

The defendant cannot turn the written contract of sale into a contract of sale on approval, by evidence of negotiations preceding the contract and alleged to constitute express warranties: Gianni v. Russell, 281 Pa. 320; Myers v. Gibson, 304 Pa. 249; Hill v. Taylor, 304 Pa. 18; East Coast Finance Corp. v. Linck, 104 Pa. Superior Ct. 518.

OPINION BY MR. JUSTICE KEPHART, February 1, 1933:

This appeal is from a summary judgment entered for want of a sufficient affidavit of defense. Appellant, hereinafter called Price, manufactured storage batteries. It saw an advertisement in a trade journal of the Madison-Kipp Die Casting Machine, manufactured by appellee, hereinafter called Madison. It wished to ascertain if the machine could die cast the grids used in its battery. Correspondence led to an interview. Madison's standard operating machine could be adapted to varying dies by their insertion in the machine. It agreed to try to make a die which would cast the grids used by Price in its batteries. If successful Price was to pay the full cost of the experiment and manufacture; if not, it was to pay one-half the cost.

Two months later, in April, 1930, Price sent Madison a written order for a die or mould. It was described as a "Double Cavity Mould for ³⁄₃₂″ Battery Grid." The order also contained these words: "Mould to operate at a minimum speed of 4 shots a minute."

In February, 1931, Madison delivered to Price the "parts to be assembled for a die casting machine,"—that is, the operating machine,—and in May, 1931, the president of Price executed a written conditional sales agreement to buy "One Madison-Kipp 10″ x 14″ Die Casting Machine, Serial No. 754-33." The conditional sales con-

tract contained no warranty of any kind, and had the following clause: "No verbal contract or agreement contrary to any of the terms conditioned in the foregoing contract has been made, and no change or modification in the foregoing contract shall be valid or of any force and effect unless reduced to writing and duly signed by the parties hereto." It thus appears two separate contracts were in effect, one for the mould or die and the other for the operating machine. Payment for the latter being refused, Madison brought suit to recover its purchase price. The affidavit of defense admitted the contract, delivery of the machine, and refusal to pay. Appellant then set forth, in addition to some matters we have related, the oral understanding that the machine would turn out four perfect grids per minute, fit for use in storage batteries. That after the machine and the die or mould were set up in the Price Company's plant, it was subsequently discovered that they would not produce the required grids at the specified speed or of proper quality; appellant thereupon gave notice of rescission of the contract and denied liability thereunder. As defendant had paid $833 or the full price of the mould or die, it set up a counterclaim for one-half of that sum. The court below gave judgment for the purchase price of the operating machine; whether defendant is entitled to a return of one-half the sum paid on the mould or die was left for further action.

Appellant contends that the case is not so clear as to warrant a summary judgment: Armstrong v. Connelly, 299 Pa. 51; Eizen v. Stecker, 295 Pa. 497, 500; Kunkel v. Aircraft Corporation, 101 Pa. Superior Ct. 35. While it is the rule of these cases that a summary judgment should be entered only when the affidavit of defense clearly presents no meritorious defense, nevertheless when the affidavit does not present a legal defense to plaintiff's claim, judgment should be summarily entered, in the interest of the speedy administration of justice. It is argued that the vendees were entitled to abrogate

the contract because of the breach of warranties either express or implied.

The court below held that the machine purchased was a patented machine or article, sold under a trade name. Appellant contends this was a question of fact for the jury and not one of law, and the court was in error in so holding. The pleadings may set forth sufficient uncontradicted facts from which it may be found that the article was sold under its patent or trade name and the court could permit no different finding by a jury. The statement of claim which sets forth the written contract, and certain averments of the affidavit, plainly shows that the machine was so sold. The affidavit of defense does not deny this.

The machine was sold as a "Madison-Kipp Die Casting Machine." The advertisement contained a picture of it. It is described in the contract as "One Madison-Kipp 10″ x 14″ Die Casting Machine, Serial No. 754-33." No further specifications were given. It is difficult to see how a trade name could be more aptly used to describe the particular product with all its various parts, just as though an automobile were ordered by model number. The machine in question was a standard article, though the dies used in it may have varied. Indeed, the difficulty from the beginning was whether there could be fitted into the machine a die which could do what Price wanted done. The sale was by the use of a name, size and number, and a jury ought not to be permitted to find that other than it was sold under its patented or trade name when there were no allegations to the contrary. Appellant cites American Mine Equipment Co. v. Butler Consolidated Coal Co., 41 Fed. (2d) 217, but in that case the "thin seam type movor conveyor" was not on the market under that name, but was specifically designed for a particular purpose.

There can be no implied warranties as to fitness in the sale of an article under its trade name. Part 4 of section 15 of the Sales Act of 1915, P. L. 543, provides: "In

case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose": Hill & McMillan, Inc., v. Taylor, 304 Pa. 18; Montgomery F. & F. Co. v. Hall P. T. M. M. Co., 282 Pa. 212. Our conclusion on this branch of the case renders unnecessary any discussion of implied warranties.

Appellant relies on an express warranty in the advertisement published by the Madison-Kipp Corporation. The part relied on is as follows: "With the Madison-Kipp, die casting production is on a machine tool basis, with the same economy, accuracy and high speed production that distinguish modern machine tool operation." But this statement is not a warranty. Section 12 of the Sales Act says that any "affirmation of fact" is an express warranty, but that a "statement purporting to be a statement of the seller's opinion only" is not. There is no allegation in the affidavit of defense which shows that this statement was untrue. The statement is the expression of the vendor's opinion. See Michelin Tire Co. v. Schulz, 295 Pa. 140. Keystone Mausoleum Co. v. Salzman, 72 Pa. Superior Ct. 437, and Lyndall v. Fidelity Storage Co., 87 Pa. Superior Ct. 344, are not in opposition to this conclusion, as in both there were plain statements of fact. The former case should be read in conjunction with Gianni v. Russell, 281 Pa. 320, and in the latter there was no written contract. Moreover, this alleged warranty is subject to the prohibition of the above quoted clause of the conditional sales contract.

The order for the purchase of the die or mould, dated April 9, 1930, containing the words "mould to operate at a minimum speed of 4 shots a minute," was an order from Price to Madison; it was not signed by Madison, and it was given in connection with the sale of the die, not in connection with the sale of the machine.

The appellant argues that the quoted words, with the oral conversations preceding the execution of the several contracts for the purchase of the die and machine, con-

stitute express warranties which survive the written contract made over a year later. Appellant confuses the two contracts; the one in which the quotation referred to appears, embraces the purchase of the die. Price's requirements were limited to that mould or die, and not to the operating machine. All the experimental work was wholly connected with the die. If, at the time the conditional sales contract for the operating machine was executed, it was intended to relate it to the purchase of the die, it would have been easy to have connected the two, but this was not done. If the die did not produce 4 shots a minute, it was either Price or the mould which was at fault, not the operating machine.

Appellant urges the two machines were to operate together and were so purchased, relying on Wolverine Glass Co. v. Miller, 279 Pa. 138. In that case the written contract itself referred to both the machine and the feeder, and the use of the words to be "arranged for operation in conjunction with the......feeding device," clearly demonstrates this, but in the order contract of April 9th in this case, the mould is the only thing spoken of and there is no mention of the machine. The failure to operate successfully all the time, for it has operated part of the time, may be due to some flaw in the mould, the material used, or the manner of operation. The purchaser had warning that no verbal contract or agreement contrary to the terms of the conditional sale of the machine should be considered unless it was expressed in writing and signed. When this was not done, it is idle to say that they can now return the machine without payment if the mould will not or did not do what the order for it contemplated. Neither the order for the die, nor the oral conversations connected therewith, nor the advertisement, considered in connection with the prohibition in the conditional sales contract, can have the effect of modifying or enlarging that instrument. This has been definitely decided in Gianni v. Russell, supra; Spier v. Michelson, 303 Pa. 66; Laurel Hill Co. v. Ben-

jamin, 303 Pa. 110; Myers v. Gibson, 304 Pa. 249; Hill & McMillan, Inc., v. Taylor, supra; Title Holding Co. v. Black, 306 Pa. 352.

We conclude, then, that the written agreement of sale, both legally and in the minds of the parties, has superseded the oral agreement and order for the die, in so far as it relates to matters which would normally be included in the contract of sale of the machine. If Price had failed on any understanding, warranties, or agreements made prior to the execution of the written contract, they should have protected themselves by including in the written agreement the promises upon which they relied: Sterling Corp. v. Jennings, 101 Pa. Superior Ct. 291.

Judgment of the court below is affirmed.