McKeage Machinery Campany *v.* The Osborne & Sexton Machinery Company, Appellant.

388

Argued October 22, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Robert P. F. Maxwell,* with him *Francis J. Walsh* and *George F. Blewett,* for appellant.

*Thomas F. Gain,* with him *Clarence B. Wrigley* and *Brown & Williams,* for appellee.

OPINION BY STADTFELD, J., December 21, 1936:

This was an action begun by foreign attachment to recover the purchase price of a second-hand machine known as a Mattison Electric Moulder, sold by plaintiff to the defendant.

Plaintiff's statement averred that on or about April 3, 1930, the defendant, through its president, James J.

Sexton, offered verbally to purchase from plaintiff a certain machine known as a "No. 225 Mattison Electric Moulder" etc. for the price of $1400, which offer the plaintiff, through its president, B. F. McKeage, orally accepted, agreeing to deliver the machine f. o. b. Philadelphia, and directed to the defendant at Columbus, Ohio; that the machine was duly delivered to the defendant f. o. b. Philadelphia, being shipped via B. & O. R. R. Company, directed to defendant at Columbus, Ohio.

The defendant's affidavit of defense admitted these facts, but set up two grounds of defense, namely: (a) That the sale was by description ...... "implying a warranty of suitability for the purpose for which it was sold", and (b) that the plaintiff made certain express warranties "through its officer ...... McKeage, and Frank Toomey, its agent." The affidavit then averred the breach of these warranties.

At the trial it appeared by the testimony of both sides that the sale was a direct transaction between Sexton, the defendant's president, and B. F. McKeage, president of the plaintiff company, over the telephone. There was a direct issue of fact between these two men as to certain important features of their telephone conversations.

The case was tried in the Municipal Court on December 12, 1935, before GABLE, J., without a jury, and resulted in a finding for the plaintiff, on December 27, 1935, in the amount of $1,881.29, representing the agreed price of the machine, plus interest. Defendant's motion for a new trial was refused on March 4, 1936 and judgment entered on the findings. This appeal followed.

The defendant company for many years has been in the business of buying, reconditioning and selling second-hand machinery. James J. Sexton, its president, while in Philadelphia, visited the office of Frank

Toomey, another second-hand machinery dealer with whom he did business. Toomey called Sexton's attention to an old Mattison Moulder belonging to the plaintiff company which was on a freight car at the railroad yard at Twenty-fourth and Race Streets.

Toomey and Sexton went together to the freight car to examine and inspect the machine. Sexton then from Toomey's office called B. F. McKeage (plaintiff's president) on the telephone and after telling McKeage that it was a very old type of moulder and full of "bugs" (defects) offered him $1400 for it. McKeage was at Montrose, Pa., some 150 miles away, and had never seen the machine which had been bought second-hand in Florida, and shipped to Philadelphia on a sale to another purchaser at $2200, subject to inspection, and as Sexton knew had been rejected.

McKeage accepted the offer, and had the moulder shipped to the defendant at Columbus, Ohio. The defendant received it, but refused to pay for it because of certain alleged defects and breach of implied warranties.

The assignments of error relate, (1) to the refusal of motion ex parte defendant for new trial, (2) the entry of judgment on the findings, and (3) rulings on evidence.

As to the implied warranty. The sale was not one by description. It was a sale of a specific second-hand machine by one dealer in second-hand machinery, to another in the same line of business, and who at least made a cursory inspection of the machine on the car in Philadelphia before making the offer of $1400 to McKeage for it.

Under such circumstances, it is well settled that there is no implied warranty as regards any defects which such examination ought to have revealed. It clearly comes within Section 15 (4) of the Sales Act of May 19, 1915, P. L. 543, which provides as follows: "(4)

In the case of a contract to sell or a sale of a specified article under its patent or trade name, there is no implied warranty as to its fitness for any particular purpose." See *Madison-Kipp Corp. v. Price Battery Corp.,* 311 Pa. 22, 166 A. 377; *Hill & MacMillan v. Taylor,* 304 Pa. 18, 155 A. 103; *Montgomery v. Hall,* 282 Pa. 212, 127 A. 633; *Thomas v. Cohen,* 275 Pa. 576, 119 A. 604. The testimony discloses nothing which would warrant an implied warranty.

At the trial Sexton undertook to prove certain express warranties or representations as to the age and condition of the machine, the size and phase of the motors, etc., by testifying that McKeage assured him regarding these matters during their talk on the telephone and endorsed everything Toomey had said about the machine; that he had in his hand a letter dated March 21, 1930, written from Florida to Toomey, and read the letter or quoted from it to McKeage over the telephone.

McKeage flatly contradicted that testimony. "There was nothing said to me at all on that line"; that he had no discussion with Sexton about the phase or horsepower of the motors and no request from Sexton that he endorse or stand back of any alleged statements of Toomey in reference to the machine or its condition; that he made no representation regarding the machine and had authorized no one else to make any. Toomey had nothing to do with the sale so far as the plaintiff company was concerned; it was a direct deal between Sexton and McKeage.

It developed from Toomey's testimony that the letter dated March 21, 1930, received by him from Florida could not have been in Sexton's hand on April 3, 1930, when he talked on the telephone to McKeage, because two days earlier Toomey had enclosed that letter with his own dated April 1, 1930 and sent it off to McKeage at Montrose. So Toomey's testimony that he showed

this letter to Sexton and Sexton's testimony that he had the letter in his hand and quoted from it or read it to McKeage during the telephone conversation of April 3, 1930 was all patently untrue.

On this conflicting testimony there was a square issue of fact on the questions controlling the case. The learned trial judge, GABLE, J., thus accurately summarizes the case, in the opinion filed: "The witnesses were B. F. McKeage for the plaintiff on the one side, and Sexton for the defendant on the other, the latter also producing as a witness Mr. Toomey from whose office Sexton telephoned McKeage. The stories of McKeage and Sexton, and, in so far as the latter was corroborated by Toomey, were quite at variance. The Court sitting without a Jury, finds as a fact that McKeage told the true story and therefore found for the Plaintiff."

The evidence both oral and documentary plainly justified the finding of the learned trial judge; and that finding in plaintiff's favor is equivalent to the verdict of a jury: *Deacon v. Hendricks,* 66 Pa. Superior Ct. 36; *Emmons v. Courtenay,* 66 Pa. Superior Ct. 35.

The first and second assignments of error must therefore be overruled.

The third assignment of error relates to the ruling of the trial judge in sustaining plaintiff's objection to the question asked by defendant's counsel as follows: "Q. I will ask you this question, Mr. Toomey: Did you make any representations personally to Mr. Sexton concerning this machine? A. Yes, sir. Mr. Gain: Objected to as immaterial. (Objection sustained.) (Exception noted for defendant.)"

Toomey, according to the testimony, was not plaintiff's agent and had no authority to make any warranties or representations. It was conceded at the trial by defendant's counsel that he was unable to prove any agency on Toomey's part for the plaintiff.

Appellant now advances the argument that Toomey should have been allowed to testify in detail as to his representations to the defendant, on the theory that he was the *defendant's own agent,* and was really communicating to the purchaser a so-called warranty made to him as the purchaser's agent, which the plaintiff here was under some duty to disclaim.

In the first place, there is no evidence that, as to the sale here involved, Toomey was in the position of agent for either the purchaser or the vendor. That sale was a direct transaction between McKeage and Sexton. Defendant's counsel disclaimed any effort to prove agency. The learned trial judge aptly remarked: "It wasn't a sale by Mr. Toomey, nor would any representations he made have any bearing here, nor certainly any representations made to him."

The letter of March 21, 1930, to Toomey from Florida, expressly refers to the loading of the machine for shipment to the Frederick Kaiser Company, and of course had no relation to the subsequent sale made by McKeage to Sexton after Kaiser rejected it. *The statements in that letter, at most, amount to mere puffing statements and expressions of opinion to Toomey, an experienced dealer and could not on any theory amount to warranties either as to him or the Kaiser Company which was receiving the machine subject to its own inspection and approval.* Certainly, when he received that letter, Toomey was not acting as agent for this defendant. Before he talked to Sexton about the machine, he had a complete examination and inspection of it by Platt, his own expert, who gave him a written report, which he had in his hands up to April 1, 1930, two days before he talked to Sexton. That report gave him the correct size and horsepower of the motors, and the fact that they were three phase.

McKeage could be under no legal duty to disavow or disclaim to Sexton in the telephone transaction of

April 3, 1930, any representations made by Toomey to Sexton based on the letter of March 21, 1930, or otherwise, if he (McKeage) had no knowledge thereof. Directly contradicting the testimony of Sexton, McKeage testified: "There was nothing said to me at all on that line", and the trial judge expressly found that McKeage told the true story.

Toomey did testify that he showed Sexton the letter and orally made representations to Sexton. Sexton undertook to "tie in" the letter and Toomey's statements, by incorporating them by reference in his narrative of his conversation on the telephone with McKeage, and in this manner succeeded in getting the letter in evidence without objection. He testified fully as to Toomey's alleged statements, but the trial judge discredited both Sexton and Toomey.

The case clearly presented a question of fact for the determination of the trial judge sitting without a jury, and the credibility of the witnesses was for him. After careful examination of the entire record, we agree with the conclusion reached by the lower court.

The assignments of error are overruled and judgment affirmed.