## Rumsey Electric Company v. Heat Seal-It Co.

*L. Lichtenstein,* for plaintiff.
*B. Pomerantz,* for defendant.

WINNET, J., October 31, 1947.—Plaintiff has filed demurrers to the amended answer and amended counterclaim of defendant. We are of the opinion that defendant's second attempt to answer the claim of plaintiff is no better than the first: the demurrers must be sustained.

The suit is based on a written order dated June 20, 1946, for solenoids (an electrical device used in the control of mechanical motion) manufactured by the National Acme Company and distributed by plaintiff. Five of the solenoids were delivered to defendant on August 19, 1946, and on September 3rd the balance of 90 was delivered and refused. On September 10th plaintiff wrote a letter saying: "We have run into difficulty with the solenoids which we ordered from you and find it will be absolutely impossible for us to use them. Our Engineering Department is working on a

solution to this problem . . ." Plaintiff refused to accept the return and brought suit for the purchase price. Defendant in its amended answer says that the solenoids were not delivered in accordance with the order as to time and as to specifications set forth in the catalog, and that "they did not operate in a good and workmanlike manner" and could not be used for the purpose intended as set forth in the National Acme catalog attached to defendant's answer. A counterclaim is added, defendant saying that by reason of the delay in delivery and defects, it was compelled to devise substitutes resulting in damage to it of $881.15.

The answer admits that the solenoids were ordered from a catalog under the trade name of "Namco 'Stellite' Welded Solenoids". Plaintiff is the distributor for the National Acme Company, the manufacturer. The catalog page attached to the answer lists solenoids of varying sizes, voltage and cycles. They are further described as to the "pounds, push or pull of maximum stroke", the "maximum stroke in inches", the "current amperes at maximum stroke", and the "current amperes in closed position". The defendant ordered 90 under number 16KKK100BP of 115 volts, 60 cycle, and five under the same number, 230 volts and 60 cycle.

The answer does not say that defendant did not get what it ordered. There is no averment that that which defendant received differed in any way from the specifications of the catalog. In the amended answer defendant says that the merchandise "was shipped too late" and "they did not perform properly, smoothly or in the manner set forth in said specifications".

Defendant is attempting to allege an implied warranty as to performance. The solenoids were ordered under a trade name. The Sales Act is clear that there is no implied warranty that merchandise is fit for any particular purpose when it is ordered under a trade name. "In the case of a contract to sell or a sale of a specified article under patent or other trade name,

there is no implied warranty as to the fitness for any particular purpose": The Sales Act of May 19, 1915, P. L. 543, sec. 15, 69 PS §124; Montgomery Foundry & Fittings Co. v. Hall Planetary Thread Milling Machine Co., 282 Pa. 212; McKeage Machinery Co. v. The Osborne & Sexton Machinery Co., 124 Pa. Superior Ct. 387. In Madison-Kipp Corp. v. Price Battery Corp., 311 Pa. 22, the machine was sold as a "Madison-Kipp Die Casting Machine. The advertisement contained a picture of it. It is described as 'One Madison-Kipp 10″ x 14″ Die Casting Machine, Serial No. 754-33.'" No further specifications were given. The defense was that the machine produced defective products. The court said (p. 26):

"The sale was by the use of a name, size and number, and a jury ought not to be permitted to find that other than it was sold under its patented or trade name when there were no allegations to the contrary. . . . There can be no implied warranties as to fitness in the sale of an article under its trade name."

We must presume that defendant knew what it was ordering. In the absence of anything in the order, or in the catalog, warranting performance or usage, none can be implied.

That defendant's answer is specious and dilatory can be judged by its letter attached to plaintiff's complaint. According to the admitted facts five solenoids had been delivered and accepted by defendant on August 19, 1946. On September 3, 1946, the 90 solenoids were delivered, and refused by defendant. In the letter dated September 10, 1946, defendant said that it finds it impossible to use the solenoids and the engineering department is working on a solution of this problem. There is not one word in the letter complaining that the shipment came too late or that in any way it departed from the specifications in the catalog. The letter is a clear admission that the ground for rejection was defendant's own engineering difficulties.

An allegation of specific ground of objection or excuse for the nonperformance of a contract may operate as a waiver of all others and may act as an estoppel against setting up any other ground: Fiumara v. American Surety Company of New York, 346 Pa. 584; Gesser et al. v. Foote et al., 112 Pa. Superior Ct. 72. In United Fruit Co. v. Bisese, 25 Pa. Superior Ct. 170, a purchaser of fruit refused to pay for it solely on the ground that the fruit was frozen on its arrival. He was not permitted in the action against him for the purchase price to allege as a ground for refusal that the quantity sent was in excess of the quantity ordered. The court said (p. 174) :

"If they had any defense it was their duty to make it known, promptly and fully, and with no concealment or omission by which the consignor might be misled. The plaintiff had a right to know the precise grounds on which its right to payment was challenged, that such action might be taken as in its judgment the situation required. The case falls clearly within the class in which the allegation of any specific ground of objection, of defense, or of excuse for the nonperformance of a contract operates as a waiver of all others, and as an estoppel, by the act of the party, against setting up any other ground."

Under the "duty to make (a defense) known promptly and fully" as stated in the United Fruit case, it was the duty of defendant to notify plaintiff of any defects within a reasonable time after August 19th when the first lot of solenoids was received. The law requires a purchaser to make immediate inspection and to reject only for cause. If the right of rejection is not exercised within a reasonable time the buyer is presumed to have accepted the merchandise: Meguire v. Gallagher, 89 Pa. Superior Ct. 576; Hausman and Buttler v. Dougherty & Sons, 96 Pa. Superior Ct. 86.

As to the shipment of September 3rd defendant did not even take the trouble to inspect it. This would indi-

cate that the buyer knew already the grounds for rejection. Fair dealing would command that the buyer immediately notify the seller of these reasons. If all we had was buyer's silence or failure to notify, we might have the problem how to construe such silence. But no such problem exists here. Defendant's letter of September 10th is a clear admission that the fault is not that of plaintiff, but its own engineering difficulties.

Further evidence of defendant's frantic search for a cause for the rejection is its attempt to allege as a defense, late delivery and a variation of the contract. The order was placed on June 20, 1946. The directions were to ship at once. When the order was received by plaintiff it was marked for shipment on July 30th or sooner. Defendant now contends this is a variation of the contract. Shipping of manufactured articles is often delayed. It has not been an unusual occurrence the past few years. A delayed shipment is not a variation of the contract. It may be an excuse for nonperformance. If it is to be, then a reasonable business man should state it at once and should not be allowed to do so as an afterthought. A defect in merchandise called promptly to the attention of a manufacturer or seller might be cured. A delay in shipment might have been satisfactorily explained. There is no reason for allowing such defenses to be stated for the first time in a suit brought for the recovery of the purchase price. Good faith of business men is not only important in their dealings but also in their statements to the court. To allow buyers of merchandise to shift their grounds for rejection is prejudicial to sellers and manufacturers and should only be allowed if such grounds could not have been known at the time the shipment was received or within a reasonable time thereafter. Otherwise, the rule above stated applies: Specific ground of objection or excuse for nonperformance of a contract operates as a waiver of all others and as an estoppel

by the act of the party against setting up any other ground.

Defendant's counterclaim could only stand if the defense stated in the answer could be sustained. The answer failing, so does the counterclaim. We need not go into other defects in the alleged cause of action in defendant's counterclaim.

Plaintiff's demurrers to the amended answer and amended counterclaim of defendant are sustained. Judgment is entered for plaintiff in the sum of $529.36, with interest thereon from October 10, 1946.