Pantano *v.* Zamer Motor Sales Company, Appellant.

318

Argued November 19, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Edward J. Harkins,* with him *Robert J. Wharton* and *Harkins & Wharton,* for appellant.

*Samuel R. DiFrancesco,* for appellee.

OPINION BY ROSS, J., January 17, 1952:

This action of assumpsit was brought to recover the sum of $1,550, averred to be the agreed value of a used car transferred by the plaintiff to the defendant. After a jury verdict for the plaintiff in the amount of $1,200, and defendant's motions for judgment n.o.v. and for a new trial were refused, judgment was entered on the verdict and this appeal was taken by the defendant.

Belle Motor Company, a partnership, was the Kaiser-Frazer automobile dealer for Johnstown from 1946 to September of 1949. In July of 1949 the plaintiff arranged to purchase a 1951 Frazer automobile from Belle Motor Company. At that time he owned a 1949 Frazer which he transferred to the dealer for an agreed sum to be applied as a credit against the price of the 1951 Frazer when it was delivered.

Before making delivery of the new car to the plaintiff and after disposing of his old car without paying him for it, Belle Motor Company lost the Kaiser-Frazer franchise and the Zamer Motor Sales Company, defendant herein, became its successor. In recognition of the obligation of the Belle Company to the plaintiff, Phillip Belle, one of the partners, made available to him a 1948 Frazer automobile. This car had been taken in on a trade by Belle from one Andrew LaPorte. The title certificate for this car was registered in LaPorte's name, but Belle had possession of it together with an assignment in blank thereof executed by LaPorte. On January 24, 1950, the plaintiff and Phillip Belle went to the defendant's place of business, taking with them the 1948 Frazer, to negotiate a trade of the 1948 Frazer for a 1951 Frazer. The bargaining which culminated in the transaction which gave rise to this action was conducted on behalf of the defendant by C. W. Klahre, a salesman, with the consent and active participation of John E. Zamer, president of the defendant corporation.

The defendant's chief mechanic inspected the 1948 Frazer. It was road-tested by being driven a distance of 1½ to 2 miles; the mechanic opened the hood, got under the car, shook it up and down and finally compared its condition against a 50-question "check sheet" supplied to the dealer by the manufacturer for the purpose. At the conclusion of this inspection, the mechanic

stated that there was nothing wrong with the car except brakes which were a little tight and a burned valve. Klahre asked Belle if the car was in "saleable condition" and received an affirmative answer. Belle knew that the 1948 Fraser had been in an accident and repaired, but this circumstance was not known to the plaintiff.

Following the report of the mechanic, the plaintiff, Belle, Klahre and Zamer went into an office and it was there agreed that the defendant would allow the plaintiff $1,550 on the 1948 Frazer. A form designated as a "Used Car Order" was provided by the defendant, and the salesman Klahre made the following notations: After the words DEALER'S NAME there was written "Zamer Motor Co."; after CASH PRICE OF CAR, the phrase "List at time of purchase"; after USED CAR ALLOWANCE, the figure $1,550; also noted was the date of the transaction and the make, model, motor number and serial number of the car "traded in".

Klahre refused to accept the title certificate to the 1948 Frazer because the assignment, while signed by LaPorte, had not been notarized. Belle had it notarized, returned the certificate to the defendant, it was accepted by the defendant, and the car was delivered to it. About two weeks later, the 1948 Frazer, according to the defendant, was discovered to be "defective", to have a "pronounced sag" and not to be "fit to sell to any customer except as a wrecked automobile". Shortly thereafter John E. Zamer told the plaintiff to call for the 1948 Frazer and informed him that the 1951 Frazer would not be delivered. The defendant did not deliver a new car to the plaintiff and it has retained possession of the 1948 Frazer.

In support of its motion for judgment n.o.v., the defendant argues that the present action is based on a sales contract whereby the defendant, as seller, agreed

to sell to the plaintiff, as buyer, one 1951 Frazer used car, for a price to be determined at the time of delivery, less a trade-in allowance or credit in the amount of $1,550. In this sale, the argument continues, the plaintiff is a buyer only and his remedy is governed by section 67 of The Sales Act (1915, P. L. 543), 69 PS 312. It follows, the defendant concludes, that the plaintiff was not entitled to judgment because he failed to prove damages as required by section 67.

With this contention of the defendant we cannot agree. We think that the transaction under consideration was one in which the plaintiff was in legal contemplation in the position of a *seller* with respect to the 1948 Frazer. Section 1 of The Sales Act, 69 PS 1, defines a sale as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price". Section 9, 69 PS 81, states that the price "may be payable in any personal property". Without question the plaintiff transferred the property in the 1948 Frazer to the defendant, and the defendant was to pay for the car by delivering a 1951 Frazer at a later date.

In *Luck v. McNeil,* 86 Pa. Superior Ct. 396, the plaintiff agreed to purchase two 5-ton trucks from the defendants for $11,000. Defendants agreed to take in payment two used 3½-ton trucks at $6,200 and to receive the balance in equal monthly installments. The defendants wrongfully refused to deliver the two 5-ton trucks after they had received and disposed of the plaintiff's trucks. We affirmed a judgment for the plaintiff, stating at page 400: "Now not only did defendants not deliver the 5-ton trucks as they agreed to do, but they kept (and ultimately sold) the two 3½ ton trucks which the plaintiff had delivered in part payment, thereby violating the rule that a *vendee* who seeks to disaffirm his purchase must seasonably

restore what the *vendor* delivered to him, *for as to those trucks, plaintiff was in the position of a vendor."* (Italics supplied.) Further, in the course of the opinion, in speaking of the plaintiff's rights, we cited section 63 of the Act, 69 PS 292, which deals with the rights and remedies of an unpaid *seller* when the property in the goods has passed to the buyer and the buyer refuses or neglects to pay for the goods.

The defendant herein argues that *Luck v. McNeil,* supra, is distinguishable from the instant case in that there the defendants had sold the trucks traded in by the plaintiff and hence were unable to redeliver them. The distinction pointed out by the defendant exists but is unimportant here. The sale of plaintiff's trucks by the defendants in the *Luck* case put them in a position where they could not disaffirm their purchase, even if they had had the right to do so. That circumstance, however, does not detract from the case as authority for the proposition that one in the position of the plaintiff here is to be treated as a seller with respect to the vehicle traded in to a dealer.

That the measure of damages is the agreed value of the 1948 Frazer, is ruled by *Gloekler v. Painter,* 272 Pa. 131, 116 A. 110, in which the Supreme Court stated at pages 134 and 135: "If a vendor has sold goods and made delivery, it is clear that the measure of damages for non-payment would be the stipulated price: Ballentine v. Robinson, 46 Pa. 177, 179. . . . Here, cash was not turned over, but an automobile at an agreed price, and the same rule should control. 'The measure of damages for breach of a contract to pay a fixed sum in a particular commodity or specific articles of property is the sum stated, and the value of the commodity at the time of the breach is not material': 17 C. J. 865. The defendant was to pay for the old car by the delivery of one that was new, in which event he was to

receive an additional amount in money. He has failed to comply with his agreement; as a result, he must pay the stipulated value of that which he received and converted to his own use: Cf. Goodwin v. Heckler, 252 Pa. 332."

The defendant does not seriously contend on this appeal that it was justified in refusing to go through with its agreement to deliver to the plaintiff one 1951 Frazer automobile. In any event such contention could not be supported. Section 15 of the Act, 69 PS 124, provides: "Third. If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed." The "pronounced sag" which the defendant discovered some two weeks after it had accepted the car was certainly a defect "which [the buyer's] examination ought to have revealed". Cf. *McKeage Mach. Co. v. O. & S. Mach. Co.*, 124 Pa. Superior Ct. 387, 390, 188 A. 543. Nor was there an express warranty. The term is defined in section 12 of the Act, 69 PS 121, as follows: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon no affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." Here it is obvious that the buyer relied on its inspection of the car rather than on Belle's statement that the car was in a "saleable condition", and further, the statement itself is no more than an expression of opinion.

It is established, therefore, that the transaction with respect to the 1948 Frazer was a sale of the car by the plaintiff to the defendant. It is also established that the defendant had no right to rescind the sale. It

follows that when the defendant gave notice of its intention not to deliver the 1951 Frazer in payment as agreed, the plaintiff had available to him the remedy of an unpaid seller where the property in the goods has passed to the buyer. Section 63 of the Act, 69 PS 292, provides: "First. Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods." It is true that here payment was to be made by delivery of a 1951 Frazer; but where payment is to be made in goods and such goods are not forthcoming, the buyer is liable for payment in money. Cf. *Santee v. Santee,* 64 Pa. 473, 479; *Moore v. Kiff,* 78 Pa. 96, 100; *Goodwin v. Heckler,* 252 Pa. 332, 336, 97 A. 475.

There is no substance in the defendant's argument that the contract of sale was vague and uncertain. There was no uncertainty surrounding the sale of the 1948 Frazer. The parties to the sale were identified; the subject matter of the sale was set out, and the consideration was expressed in dollars and cents. Delivery was made immediately and hence there was no need to include in the memorandum of the transaction a time for performance.

In support of its motion for a new trial, the defendant contends that the court below erred in permitting a witness to be examined as to some matters not included in the scope of direct examination. It is, of course, the rule that the cross-examination of a witness should be confined to matters upon which he was examined in chief. However, the scope or limitation of cross-examination of a witness is largely within the discretion of the trial judge (*Com. v. Woods,* 366 Pa. 618, 79 A. 2d 408) and his action will not be reversed

in the absence of an abuse of discretion (*Weintraub Appeal,* 166 Pa. Superior Ct. 342, 71 A. 2d 823) or "unless obvious disadvantage resulted therefrom to the other party". *Tolomeo v. Harmony Transp. Co.,* 349 Pa. 420, 423, 37 A. 2d 511. It is our opinion that the trial judge here did not abuse his discretion in the latitude of cross-examination he allowed and that no "obvious disadvantage resulted therefrom" to the defendant.

The defendant contends also that the parol evidence rule was violated when witnesses were permitted to testify as to matters leading to the signing of the "Used Car Order". The short, and we think proper, answer to this contention is that the evidence in no way tends to vary, contradict or explain the terms of the written order. Defendant's main concern seems to be that the court below concluded from this testimony that the plaintiff was to receive a *new* rather than a *used* 1951 Frazer, and permitted the plaintiff to amend his complaint to conform to this proof. As we view the case, it is a matter of no importance whether the defendant was to deliver a new or a used car. The plaintiff is not seeking damages for failure of the defendant to deliver him a new 1951 Frazer; he seeks payment for the 1948 Frazer sold to the defendant. For present purposes it is sufficient to know that the defendant refused to pay the plaintiff for the car transferred to it by delivery of *any* car, new or used.

It is our unanimous opinion that the learned court below correctly disposed of the defendant's motions by refusing to grant either judgment n.o.v. or a new trial.

Judgment affirmed.