**Edward MARKS and Maurice Kantro as Co-Partners, tr/as Industrial Factors**

v.

**PHILADELPHIA WHOLESALE DRUG COMPANY, a corporation.**

**Civ. A. No. 13560.**

United States District Court
E. D. Pennsylvania.

Oct. 28, 1954.

A. Samuel Buchman, Philadelphia, Pa., for plaintiffs.

Richard E. McDevitt, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

CLARY, District Judge.

Plaintiffs are factors engaged in lending money to business enterprises which loans are usually secured by assignments of accounts receivable. This present action was brought to recover on an alleged account receivable assigned to plaintiffs for value by American Vitamin Associates, Inc., at the time in question a California corporation. The amount actually sought to be recovered by the plaintiffs is $6,800. On May 5, 1954, after trial, a jury returned a verdict for plaintiffs in the amount of $269.06 with interest for a total recovery of $318.36. Plaintiffs filed timely motions for a new trial and to set aside the verdict and enter judgment in their favor in the amount of $6,800 with interest. The gravamen of both motions is the same and, therefore, they will be considered together.

Defendant is a Pennsylvania corporation engaged in the wholesale distribution of drugs to retail druggists in the city of Philadephia and vicinity. On September 11, 1951, Robert Sherry, a representative of American Vitamin Associates, Inc. (hereinafter referred to as "Vitamin"), appeared in Philadelphia at the office of Hugh A. Newman, defendant's drug buyer. It does not appear that the parties had had any previous dealings. It is not denied that Sherry was an agent of Vitamin but whether he had authority to consummate sales or to exercise discretion in negotiating the terms of a sale does not appear.

There was testimony of, and the jury could have believed, the following facts: Sherry represented to Newman that Vitamin was planning a large sales campaign in the hitherto unexploited (by Vitamin) eastern market to stimulate the sale of its products. He described a large contemplated promotional campaign, the planning and commitments for which had already been largely completed. This campaign, it was testified, included twenty full-page advertisements in three Philadelphia newspapers; a weekly, hour long, television program for a month or more, and three hours of daily radio advertising. This advertising, he represented, had been contracted for and was to commence on September 19. An important element of the campaign was the giving of, free of cost, one half dozen units of merchandise to any retail druggist who purchased a dozen such units. Each customer of defendant's was also to receive unconditionally, at no cost, $9.96 worth of vitamins whether or not he purchased any unit. The object of this "give away" program was to induce all possible retailers to stock and display Vitamin's products in order that they would be readily available to the public when it responded to the contracted-for advertising. Sherry represented that Vitamin had decided to utilize wholesale druggists to accomplish this free product distribution and to that end would provide certification forms to be signed by retailers who accepted the merchandise. These completed forms would then be returned by defendant to Vitamin and the former would be credited with an amount equal to the wholesale purchase price of the free vitamins so disposed of. Since such free distribution was planned to be offered to any and all of defendant's customers a large stock of vitamins would of necessity be required. Newman, so he testified, was persuaded that defendant should enter into the plan but he told Sherry that he thought the plan should be reduced to writing before any further action was taken and defendant became obligated to accept such a large stock of vitamins. Sherry urged that time was of the essence since the advent of the advertising campaign was imminent and that all he

wanted at the moment was something from defendant which would serve as a "requisition" or shipping instruction so that Vitamin's California plant would have a record of the disposition of the merchandise. Sherry stated that he was flying to the West Coast immediately with a stopover in Chicago and would provide written confirmation of the terms of the transaction in the form of a letter when he arrived. Newman demurred to this arrangement at first but finally wrote out, in pencil, on defendant's printed order form, a list of some thirty gross and fifteen dozens of units of Vitamin's products, described thereon by trade name and size, and signed the form. Vitamin's name was written in at the top of the sheet along with the date and at the bottom was the notation, "Counter displays / authorization forms / 50 binder inserts". Written in ink, apparently at about the same time, were the notations, "5%—10 days", "Less 33⅓% & 16⅔%", "Less 3% salesman's commission off invoice". Sherry then departed with the order form. There is testimony in the record that he had made a like proposition to another large Philadelphia drug wholesaler and that he had expressed the same intention as to a third.

Vitamin shipped to defendant under dates of September 12 and September 15, 1951, merchandise invoiced at $8,451.-20. The printed invoice forms sent with the shipments had been filled in with a list of product descriptions, quantities, unit and extension prices, and discount calculations. These goods were shipped by air and defendant received them a few days after the invoice dates. Stamped on both invoices was a notification that the account had been assigned and was payable to plaintiffs. The account purportedly represented by the first invoice in the amount of $6,800 had in fact been factored on September 12. The counter displays and authorization forms were also received by the defendant.

No communication having been received from Vitamin, other than the goods and invoices, defendant sent a letter to Sherry in Chicago on September 21, 1951, requesting letter confirmation of the promotion program and authority to distribute the free products. A telegram was received from Vitamin on September 26 which read: "Confirming arrangements whereby you give a bottle Thyavals 45's Orvita 8 ounce and Thyavals Formula 621 30's to your account. We will reimburse you according to Sherry's talk with you. Letter follows." No letter followed. Defendant wrote to Vitamin on October 2 calling attention to the fact that no letter had been received and requesting instructions on how to handle "the special placement offer" so that defendant could proceed. No reply was received to this letter. Defendant next received a bill from plaintiffs, dated October 1, 1951, in the amount of $8,-451.20. On October 29, 1951 defendant notified Vitamin that it had placed the order in reliance on the contemplated promotion and advertising program described by Sherry, which had not materialized, and that defendant considered that a breach had occurred and any agreement was therefore rescinded. It was there stated that the merchandise was being held for Vitamin's account and instructions were requested. No further communications between the parties occurred except a telephone call from plaintiffs demanding payment.

There was evidence that the advertising "campaign", as such, consisted solely of a one hour television show sponsored by Vitamin on October 10, and three fifty-five minute radio programs daily, Monday through Saturday, for three weeks starting October 1 and ending October 20. There was no newspaper advertising placed by Vitamin but there were some inclusions (minimal in amount) of Vitamin's products in the newspaper display advertising of a drug store chain which was not a customer of defendant. Defendant sold, before relations between the parties collapsed, some $269.06 worth of Vitamin's products and has not contested its obligation to pay for so much of the order as was so sold.

Plaintiffs' assigned reasons for seeking a new trial relate to admission of various portions of the evidence over objection, which action plaintiffs contend was contrary to only two legal conclusions which they insist the Court should have reached. If plaintiffs are wrong on these legal principles then their objections to the testimony evaporate. The motion to set aside the verdict and amend the judgment is also grounded on the second of these legal contentions. Only the claim for $6,800 covered by the first invoice is pressed in this action, the remaining $1,651.20 of the original claim apparently having been abandoned.

■ The first of plaintiffs' contentions is easily disposed of. The argument is that as assignee of this alleged account receivable no evidence as to the actions of Vitamin or its agents is admissible against plaintiffs. In the same vein, it is argued that testimony of any conversation between defendant and Vitamin's agent should be excluded as hearsay in that plaintiffs were not present at such times and are not bound by whatever Vitamin's agents might have said. It is patent hornbook law that this contract, if there was a contract, must have consisted of the order form plus the invoice plus possibly the telegram. It was not a negotiable instrument. It could even be argued that the contract, if it ever existed, was of such character as not to be assignable. It not being of negotiable character plaintiffs must be deemed to have purchased the account subject to any infirmity it then suffered and must meet any defense which could be asserted against Vitamin.

■■ Plaintiffs' second contention is that the order form and the invoice when integrated constitute an entire written contract so as to bring into play the parol evidence rule. It would follow that, absent fraud, accident, or mistake, all evidence aliunde these writings should have been excluded and cannot be considered for the purpose of contradicting or modifying the obligation as evidenced by the writings. The conflicts of law problem inherent in the case has been ignored by plaintiffs, they apparently assuming that Pennsylvania law would or should be applied. The Pennsylvania conflicts rule is that the law of the place of contracting shall be applied, Long v. Morris, 3 Cir., 1942, 128 F.2d 653, 654, 141 A.L.R. 1041. It is probable that the state of alleged contracting in this case *was* Pennsylvania but it is unnecessary to so decide and the result will not be affected since no California law has been pointed out to the Court. The Court, therefore, will assume that it is the same as that of Pennsylvania.

Plaintiffs' argument is grounded on the unquestionably sound doctrine announced in Gianni v. R. Russell & Co., Inc., 1924, 281 Pa. 320, 126 A. 791. If the instant writings can be brought within the law of that decision plaintiff must prevail. In Gianni, the plaintiff was the lessee of a small store in an office building. New owners acquired the building and a new lease was negotiated and entered into. The lease spelled out in detail the conditions under which it was granted and provided, inter alia, that the lessee was permitted to sell, " 'fruit, candy, soda water,' etc." but was not to be permitted under the lease to sell tobacco. Lessors subsequently let another store in the building to a drug company which also sold candy and soda water. Plaintiff sued the lessor for damages occasioned by loss of business to the drug company and claimed that in negotiating the lease with lessor's agent it had been orally agreed that in return for plaintiff's foregoing the sale of tobacco he was to have the *exclusive* right to sell " 'fruit, candy, soda water,' etc." in the building. As here, no fraud, accident, or mistake was alleged. The court said, 281 Pa. at page 324, 126 A. at page 792:

> "In cases of this kind, where the cause of action rests entirely on an alleged oral understanding *concerning a subject which is dealt with in a written contract*, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent (as to whether a cer-

tain subject was intended to be embodied by the writing), the chief and most satisfactory index * * * is found in the circumstances whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all in the writing*. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation.' Wigmore on Evidence (2d Ed.) vol. 5, page 309.

"As the written lease is the complete contract of the parties, and *since it embraces the field of the alleged oral contract,* evidence of the latter is inadmissible under the parol evidence rule." (Emphasis added.)

■ In considering this matter the order form completed by defendant must first be considered. There are no prices entered opposite the product quantities there listed. But, says plaintiffs, the prices are supplied by the invoice which is a part of the evidence of the contract. The invoices *do* supply prices but also listed thereon are quantities of Vitamin's products *not* listed on the order form and which are followed by the notation, "N.C." which it is agreed means "no charge". And, indeed, defendant was not charged for these quantities. The original of the order form which Sherry took with him has the discount percentages noted in ink. The carbon copy retained by defendant does not show these notations but other and, to some degree, different notations of discounts entered in pencil sometime after the original was written. The items "Counter displays" (no quantity) and "50 Binder inserts" are conceivably self-explanatory though they do not appear on any invoice. The term "authorization forms", however, is unarguably ambiguous and demands extrinsic explanation. Such a term would alert any reasonably vigilant business person that there was likely something to the transaction more than

the ordinary purchase and sale of merchandise. And since no prices are assigned to the vitamins on the order form but were supplied by the invoice, was it contemplated that counter, displays, authorization forms and binder inserts also be purchased, or some of them, or were they to be given away free? Since substantial amounts of vitamins were, according to the invoices, supplied on a no charge basis, what if anything was defendant expected to do in return? Gratuities of this size and nature are not part of the usual course of business. Vitamin found it necessary or desirable to ship the products listed on defendant's order form on two different days under two invoices. Why are plaintiffs suing only for the value of the products shipped under the first invoice, $6,800 and are not claiming for the remainder of the items listed on the order blank and shipped under the second invoice in the amount of $1,651.20? None of these questions can be answered by reference to the two writings which plaintiffs contend are, when integrated, an entire contract. The two writings fall far wide of complementing each other and cannot be dovetailed on the basis of the information therein contained. They raise far more questions about the transaction than they lay. No court or business man could consider that these writings were "intended to set forth the entire agreement as to that particular subject." We have, therefore, two writings of which one contains an ambiguous term, "authorization forms", and when taken together are neither self-explanatory nor can they be said to be complete in their essential elements. Clearly extrinsic evidence would be admissible to cure these defects and supply the deficiencies. See Fields v. James B. Sipe & Co., 1924, 319 Pa. 448, 181 A. 377; Warner Co. v. North City Trust Co., 1933, 311 Pa. 1, 5, 166 A. 230; Madison-Kipp Corporation v. Price Battery Corporation, 1933, 311 Pa. 22, 27, 166 A. 377; Easby's Petition, 1937, 326 Pa. 511, 192 A. 646, and O'Brien v. O'Brien, 1949, 362 Pa. 66, 66 A.2d 309.

Defendant here, however, is not seeking to contradict or modify the content of the writings. It is instead contending that though the writings say exactly what the parties intended them to say, they do not constitute a contract nor did any contract ever exist between the parties. Nor could such a contract come into being, says defendant, until defendant was supplied with a written confirmation of the engagements made by Sherry. Stated in another way, defendant insists that Vitamin was to supply, as its part of the contemplated bargain, something more than vitamin tablets for sale, i. e. a considerable volume of advertising and free merchandise, and that it was not intended by the parties that they should be contractually bound until such commitments were reduced to writing. It is really not important whether the advertising was ever done or credit for the free merchandise ever given for if defendant is correct there was never any contract. This is what the defendant attempted to prove and it was this question of intent which was placed before the jury. On that point the jury found for the defendant. The writings not being sufficiently complete or precise to justify excluding evidence aliunde the papers, evidence was properly admitted to explain the matters referred to in the writings and to make clear patent ambiguities. If instead of a different contract, the evidence establishes no contract at all, plaintiffs cannot complain.

▆▆ Plaintiffs in their motion for a new trial stated that they "reserve the right to file additional reasons * * *." Eleven additional reasons were filed more than two months later. All related to specifically quoted testimony admitted over plaintiff's objections. The Court, if it were to consider these reasons, would be exceeding its jurisdiction as laid down by Rules 59(b, d), and 6(b) of the Federal Rules of Civil Procedure, 28 U.S.C., Fine v. Paramount Pictures, Inc., 7 Cir., 1950, 181 F.2d 300. Reasons for granting a new trial cannot be considered if filed more than ten days after entry of judgment. A party cannot "reserve the right" to so extend this expressly limited jurisdiction nor could the Court do so on its own motion.

An order will be entered denying both motions.